**Linda E. SINNARD, Appellee,**

v.

**Jack W. ROACH, John M. Walsh, and Key City Bank Trust Company, an Iowa Banking Corporation, Appellants.**

No. 85–1438.

Supreme Court of Iowa.

Oct. 21, 1987.

W. Don Brittin, Jr., and K.J. Walker of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellants Roach and Key City Bank.

Frank D. Gilloon III of Gilloon Law Offices, Dubuque, for appellant Walsh.

Victor V. Sprengelmeyer, Dubuque, for appellee.

McGIVERIN, Chief Justice.

This matter comes before us on applications for further review from the court of appeals. Defendants Jack W. Roach and Key City Bank suffered an adverse jury verdict on plaintiff Linda E. Sinnard's claim of fraudulent misrepresentation. In an equity proceeding in the same case, defendant bank also lost its cross-claim to foreclose a mortgage on plaintiff's home. Defendant John M. Walsh also was found by the jury to be liable to plaintiff for fraudulent misrepresentations. All posttrial motions were overruled. The court of appeals affirmed the trial court's entry of judgment for plaintiff and the denial of defendants' posttrial motions. Defendants appeal several rulings of the trial court. We affirm the district court as to defendant Walsh and reverse as to defendants Roach and the bank. The decision of the court of

appeals is affirmed in part and vacated in part accordingly.

I. *Background facts.* The factual background of this action is complex and in dispute. We recite the facts in the light most favorable to the jury verdict.

Linda Sinnard's husband, Carroll Sinnard, died in September 1979, leaving her the sole owner of their home valued at approximately $250,000 and the beneficiary of a $300,000 life insurance policy. For tax reasons, she elected to take the insurance payments in three yearly installments of $100,000. Her first insurance check arrived in January 1980, and Linda used it to purchase a twelve-month certificate of deposit (CD) of $100,000 at East Dubuque Savings Bank.

Over the course of the next year she met and began dating defendant John Walsh. Following John's unsuccessful reelection bid for the Iowa Senate, the two were married in December 1980. John then went to work for his father in the family company.

Linda received her second $100,000 insurance check in January 1981. Her first CD was cashed to pay various outstanding loans not relevant to this proceeding and she purchased a second CD with the insurance check. Linda had the interest from her CD paid directly into her savings account each month to cover living expenses.

Shortly after the marriage, John became interested in the prospects of investments in South Africa. Attempts to interest his father in his foreign investment schemes were unsuccessful and caused considerable tension in the family. John eventually quit working for his father and established his own investment business. He also tried to get Linda to mortgage her house for the purpose of obtaining investment capital. Her refusal caused frequent quarrels. Perhaps as a result of this conflict, Linda placed the deed to her house and the abstract of title in a safe deposit box at her bank to which John did not have access.

In April 1981 and again in May of that year, John took out loans totaling $29,000 under the name of B & W Trading Company from the East Dubuque Savings Bank.

In June, John changed the name of his business to Walsh Trading Company. When the B & W notes came due in September, John dictated a letter to Linda in which he had her pledge her CD on deposit at East Dubuque Savings as collateral for "Walsh Trading Company" loans. The letter, signed by Linda, also stated that Linda was the only other owner of the company with John, and gave him complete authority for handling the company's business. He then paid the former notes by renewal with a note for $70,000 secured by Linda's CD. Linda testified she was not aware of the purpose of the letter or of the subsequent $40,000 advance to John.

Later in September, John traveled to South Africa in an effort to arrange sales of a small three-wheeled all-terrain vehicle, called a tractor for importation rule purposes. The trip was successful and Walsh Trading Company received an order for 100 tractors from a South African company. Dissatisfied with East Dubuque Bank, and perhaps because he had reached his borrowing limit there, John approached Jack Roach, the president of Key City Bank, to procure a loan to purchase the tractors in the United States before shipping them to South Africa. Roach agreed to make the loan if John would put up significant collateral other than the tractors themselves. Linda testified that John asked her to talk to Roach about using the check coming from her insurance agent in January 1982 as collateral for the loan to purchase tractors.

Linda spoke to Roach on November 13, 1981, and agreed to assign her insurance proceeds to Key City Bank as collateral for the tractor loan if Roach would purchase a CD with the proceeds and pay the interest into her savings account. As she explained at trial, she preferred borrowing against her CD to buying the tractors directly with her insurance check because she did not want to lose the interest payments. She also agreed to transfer her CD at East Dubuque Savings Bank to Key City Bank, but she did not know that the CD she was transferring was currently being used as collateral for Walsh Trading Company

debts at East Dubuque Savings Bank. During the call, Linda explained the importance of having the interest from her CD's paid into her savings account to cover family expenses. Roach told Linda the bank would arrange to purchase a CD with her check and have the interest paid directly into her savings account. Linda agreed to send a letter to the insurance company so the money would be sent directly to the bank.

At some point after committing her insurance proceeds as collateral for the tractor loan in 1981, Linda fortuitously learned about the $70,000 loan John had borrowed at East Dubuque Savings Bank against her CD under the authority of the letter he had her write to East Dubuque Savings Bank. She was quite upset, and testified that she never would have "tied up" her second CD with Key City Bank if she had known that her first CD was being used as collateral at East Dubuque Savings Bank.

On November 24, the Key City Bank board approved a line of credit for Walsh Trading Company for $100,000 secured by Linda's assignment of her life insurance proceeds and a second $100,000 line of credit to be secured by her CD to be transferred from East Dubuque Bank. John took out a loan the next day for $80,000 from Key City Bank. In December, he took out additional loans of $15,000 and $70,000, the latter loan to be secured by a further assignment of equity in Linda's home. Linda was not aware that John took out these later two loans, or that he planned to assign the equity in her house to secure any loans.

Late in December, Linda received a call from Key City Bank saying her final check from the insurance company had arrived. Because the check was dated January 1982, she was told she could come in to the office after the first of the year to sign it.

Between the end of December 1981, and some time in January 1982, the tractors were shipped to South Africa.

Linda went to Key City Bank during the first week of January 1982, to endorse her insurance check. There she met Jack Roach for the first time. He had prepared a CD for $100,000 for her and had placed the excess of $6,000 (interest paid by the insurance company) in her savings account. While there, she remembers signing a note for $80,000 for the tractor loan which she understood was secured by her new CD. No such document appears in the record. She did not realize at this time that the bank had already advanced a total of $165,000 to John through Walsh Trading Co. She also gave Roach a check for $10,000 out of her savings account and asked him to buy her a CD for that amount.

A letter dated January 6, 1982, and signed by Roach was introduced at trial. The letter noted that Linda's $10,000 CD was enclosed along with a form for her to assign her CD being held by Key City Bank and to hypothecate or pledge her CD being held at East Dubuque Savings Bank. Linda testified that a few days after her visit to Key City Bank, John handed her the $10,000 CD she had requested saying it had come in the mail. John did not say anything else came with the CD.

In early 1982, John suggested that he give Linda the right to sign checks on his corporate account, because she had been complaining that her CD's were tied up in his company investments. She fully expected to be able to clear her CD once the sale from the tractors in South Africa materialized. On or about January 25, John handed Linda a number of forms to sign. One of the forms she signed was a corporate resolution of the Walsh Trading Company naming Linda as secretary and authorizing her to sign for the corporation. The testimony is not clear how many other forms Linda signed or whether she believed they were all related to John's corporation. Nevertheless, she did not read the forms before signing them. Two documents introduced at trial bearing the date January 25, 1982, were a certificate to hypothecate her CD for Walsh Trading Company debts, and an unlimited loan guarantee to Key City Bank for Walsh company debts secured by an assignment of equity in Linda's home which was signed by both John Walsh and Linda. Although Linda was not sure when she signed these doc-

uments or under what circumstances, she did admit signing them.

Also dated January 25, 1982, were two promissory notes signed by John alone for Walsh Trading Company. The first note for $90,003 was to cover the outstanding loan for $70,000 now due to Key City Bank plus interest and a small advance. It was secured by the assignment of equity. The other note for $95,000 paid off the previous $80,000 and $15,000 notes owed by Walsh Trading Company and was secured by Linda's second CD.

At some point in February, sale of the tractors was significantly delayed because of recent South African import laws. John flew to South Africa to work out the difficulties but was unsuccessful.

On his return from Africa, John paid the outstanding notes owed to Key City Bank by renewal on March 12. The $90,003 and $95,000 notes were replaced by $100,000 notes each, still secured by Linda's assets. In April, John borrowed an additional $25,000 for Walsh Trading Company using the equity in Linda's home as security. Linda was unaware of these transactions.

By August, the import problem with the tractors was finally resolved, but not before Walsh Trading Company lost a considerable amount on the investment. Only $28,500 was realized on the sale. None of this money was used to repay the outstanding loans.

In September 1982, Linda formed her own corporation to buy a restaurant with the hope of making money to offset the loss on the tractor sale. She used most of the tractor sale proceeds to apply on the restaurant purchase. While Linda was tipsy from celebrating the purchase of her new restaurant late one evening, John handed her some documents to sign related to his business. Although she was intoxicated and unable to read them, she signed them. The documents included a mortgage note for $138,293 to renew one of the $100,000 notes and the $25,000 note, a mortgage of her home, and a new note for $109,337 secured by her other $100,000 CD and her $10,000 CD.

In March 1983, Linda's restaurant was losing money and she decided to mortgage her home for capital to keep the business going. She testified she was stunned to learn when she presented her deed to a loan officer at Dubuque Bank and Trust that there was an outstanding mortgage already on her house to Key City Bank. She did not believe that a mortgage could be taken on her home without the deed, which she had kept locked in a safe deposit box.

When Walsh Trading Company was unable to pay its obligations, Key City Bank acted to redeem the CDs and to foreclose the mortgage on Linda's house.

II. *Background proceedings.* In her petition in this case, Linda Walsh sought first, compensatory damages from Key City Bank, Jack Roach and her former husband, John Walsh, for fraudulent misrepresentation; second, an order cancelling the "assignment of equity" and mortgage documents signed by her; and third, punitive damages against all defendants. An additional claim for negligence against all defendants and two notary publics was resolved by a directed verdict against Linda during the trial. Those claims are not involved in this appeal.

Key City Bank crossclaimed against Linda and John Walsh for judgment on the mortgage note executed by them and foreclosure of the mortgage. Plaintiff denied the crossclaim, alleging that the mortgage was void.

At the close of plaintiff's evidence and again at the close of all evidence, defendants Key City Bank and Roach moved for a directed verdict on the fraudulent misrepresentation claim alleging a failure by the plaintiff to present clear and convincing evidence of any legal duty owed to Linda by Roach and the bank. *See* Iowa R.Civ.P. 243.

At the close of trial the jury returned special verdicts finding fraudulent misrepresentations by John Walsh, Jack Roach and Key City Bank, and assessing compensatory damages of $208,000 against Walsh, of $46,000 against Roach and Key City Bank and punitive damages of $500,000

each against Walsh and Key City Bank. On the same day the court entered an order confirming all verdicts.

Motions for judgment notwithstanding the verdict and for new trial filed by Walsh, Roach and Key City Bank were all overruled. The district court then filed its findings of fact, conclusions of law and judgment entry on the equity portion of plaintiff's petition. The court canceled the assignment of equity and real estate mortgage as having been procured by fraud and dismissed Key City Bank's crossclaim for foreclosure of the mortgage.

All defendants appealed, each on several grounds. We transferred the case to the court of appeals which affirmed the district court. Defendants Roach and Key City Bank, in their applications for further review, have narrowed their assertions of error to the grounds raised in their motion for judgment notwithstanding the verdict. Defendant Walsh asserts error in the court's refusal of an offered jury instruction, the rendering of the verdict, and in assessment of punitive damages.

III. *Contentions of defendants Roach and Key City Bank.* Defendants Roach and Key City Bank both assert that there was insufficient evidence of fraud by them to submit the issue to the jury. On appeal we must determine whether there was substantial evidence to support each element of plaintiff's claim. If there was not, the motion for judgment notwithstanding the verdict, urged on the same grounds as the motion for directed verdict, should be granted. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477–78 (Iowa 1982).

■ There are seven elements of fraud in Iowa. *See Hall v. Wright,* 261 Iowa 758, 766, 156 N.W.2d 661, 666 (1968).[1] The three elements relevant to this appeal, frequently treated as a single element and referred to as fraudulent misrepresentation, are a (1) material (2) representation that is (3) false.

■ A representation need not be an affirmative misstatement; it can arise as easily from a failure to disclose material facts. *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987). To be actionable, however, the misrepresentation must "relate to a material matter known to the party ... which it is his legal duty to communicate to the other contracting party whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances." *Wilden Clinic Inc. v. City of Des Moines,* 229 N.W.2d 286, 293 (Iowa 1975); *accord Cornell,* 408 N.W.2d at 374.

While this is a case argued upon principles of fraud, our analysis of the duty-to-reveal issue parallels the same analysis in a breach of fiduciary or confidential relationship case. In a recent opinion addressing a breach of fiduciary relationship claim, we noted the general rule that "a fiduciary duty or confidential relationship does not arise solely from a bank-depositor relationship." *Kurth v. Van Horn,* 380 N.W.2d 693, 696 (Iowa 1986). The plaintiffs in that suit argued that the rule should be different when the bank customer becomes a borrower. *Id.* Rejecting their contention on the facts surrounding the loan in question in that case we noted, "Because the circumstances giving rise to a fiduciary duty are so diverse, any such relationship must be evaluated on the facts and circumstances of each individual case." *Id.* See generally, Annotation, *Existence of Fiduciary Relationship Between Bank and Depositor or Customer so as to Impose Special Duty of Disclosure Upon Bank,* 70 A.L.R.3d 1344, 1347–48 (1976).

■ Defendants argue that the transactions between Roach and Linda Walsh never reached the point where a legal duty arose on the part of Roach to protect Linda from either her husband's or her own folly. We agree.

Linda admits signing several documents including two separate assignments of equity in her house in favor of defendant

---

1. The elements of fraud are (1) material (2) false (3) representation coupled with (4) scienter and (5) an intent to deceive, which the other party (6) relies upon with (7) resulting damages to the relying party.

bank, a hypothecation of her second CD as collateral for Walsh Trading Company, and two assignments of her CDs as security, again, for the same company. She cannot validly complain that the subject matter of these documents was withheld from her. Each document stated clearly on its face what it was and which of her assets it would encumber. Linda did not read the documents when she signed them and testified she did not intend to read them when she signed.

■ She did sign some of those documents at her husband's insistence while she was intoxicated, but as against defendants Roach and Key City Bank, this fact is unavailing. No evidence was offered at trial indicating that Roach or anyone at the bank knew that Linda had not read the documents before signing them or that she was intoxicated when she did sign them. By her own testimony she only signed one document in front of Roach. All the others were signed at her home. She presented no evidence that these defendants tried to keep her from understanding what she was signing or that they were aware that she did not read the plain language on the face of the documents.

Her case against defendants Key City Bank and Roach, therefore, is not based upon what was in the documents she signed, but upon what was *not* in those documents. Because the amounts of the loans were not contained in the various loan guarantee documents, she argues that Roach failed in his duty to reveal to her during these transactions that she was committing her assets as collateral for debts that were far larger than she understood.

Determinations of when a duty to reveal arises in a fraud case do not lend themselves to scientific formulation. In a recent case on fraud we outlined some important considerations when we stated, "A misrepresentation may occur when one with superior knowledge, dealing with inexperienced persons who rely upon him or her, purposely suppresses the truth respecting a material fact involved in the transaction." *Kunkle Water and Elec.*

*Inc., v. City of Prescott,* 347 N.W.2d 648, 653 (Iowa 1984).

Undoubtedly, Roach was experienced in these matters and Linda Walsh was not. We take Linda at her word that she would not have continued to commit her assets as collateral had she known the extent of Walsh Trading Company's debts. Nevertheless, we believe that there is far less than substantial evidence indicating Roach had a duty to reveal material information concerning Walsh Trading Company's debts to Linda, an officer and signatory for that company, who ultimately claimed she was unaware of the extent of those debts.

First, Linda argues that she relied upon Roach to protect her assets, but offers as evidence of this only the fact that she told him she needed the interest from her CD to cover living expenses. This information was conveyed in the same conversation with Roach of Key City Bank in which she agreed to commit her CDs as collateral for the Walsh Trading Company loans. We do not believe this is substantial evidence upon which a jury could conclude that a confidential relationship existed between plaintiff and Roach and the bank. Neither do we conclude that this statement alone was sufficient to alert Roach to the possibility that Linda was placing the sort of trust in him that could legally bind him to deal with her as a fiduciary concerning the extent of the bank's loans to Walsh Trading Company. *See Manson State Bank v. Tripp,* 248 N.W.2d 105, 108 (Iowa 1976) (the court found that the banker "knew or should have known" investor was relying upon his advice); *accord First Nat'l Bank in Lenox v. Brown,* 181 N.W.2d 178, 182 (Iowa 1970).

We also find no evidence in the record indicating Roach was aware that Linda was ignorant of her true financial situation and that of Walsh Trading Company. A comparison to our recent decision in *Cornell v. Wunschel,* 408 N.W.2d 369 (Iowa 1987), is instructive.

The defendant in *Cornell* was an attorney helping his wife sell a motel she owned. He presented the motel's past profit records to the plaintiff, a potential

buyer of the motel, without telling her that he had been supporting his wife's motel business with substantial personal funding over the past few years. We agreed with the plaintiff's contention that "the jury could have found from the evidence adduced at trial [that] the facts bearing on the profitability of the Clinton House Motel were peculiarly within [Wunschel's] knowledge." *Id.* at 375.

By contrast, the facts concerning Walsh Trading Company's debts were not peculiarly within Roach's knowledge. John Walsh signed for those loans. There is nothing in the evidence presented at trial to indicate Roach knew or should have known that Linda, the wife of John Walsh and the corporate secretary of Walsh Trading Company, was unaware of the extent of the corporation's debts. In fact, when Roach first met Linda in his office in January 1982, he had already spoken to her by phone about putting up at least one of her CDs as collateral for the tractor loan. The purpose of the loans was made clear to her during that conversation. Roach could not have purposefully withheld from Linda information he was unaware she did not have.

We conclude that substantial evidence did not support plaintiff's claim for fraudulent misrepresentation against defendants Roach and the Key City Bank. These defendants' motion for directed verdict should have been sustained. Accordingly, we reverse the trial court's ruling denying the motion for judgment notwithstanding the verdict made by defendants Roach and Key City Bank.

■ IV. *Cancellation of the real estate mortgage and assignment of equity.* As already noted, the trial court sitting as a court of equity, simultaneously with the law action, entered an order cancelling the mortgage and assignment of equity on plaintiff's home on the basis it had been obtained by the bank through fraudulent misrepresentations. Because we have concluded there was no fraud established as against the bank, that basis for cancellation of the mortgage and assignment of equity no longer exists. *Cf. Kurth v. Van*

*Horn,* 380 N.W.2d 693, 698 (Iowa 1986) (reversing fraud verdict eliminated ground for canceling mortgage).

Plaintiff also argues that the mortgage and assignment of equity she signed are invalid for lack of consideration. Her position is untenable.

We have held that a precedent obligation is adequate consideration for a mortgage. *CBS Real Estate of Cedar Rapids, Inc. v. Harper,* 316 N.W.2d 170, 176 (Iowa 1982). Additionally, on the date Linda signed the mortgage and assignment of equity dated October 11, 1982, Key City Bank was holding overdue notes of Walsh Trading Company totaling $247,000 and secured by Linda's assets. The bank was entitled to institute legal proceedings to redeem Linda's CDs but forbore taking action as consideration for the new loan documents Linda had signed.

Finding that the mortgage and assignment of equity were procured for adequate consideration and without fraud, we conclude that it was error to order those instruments cancelled. This action by the court in equity is reversed. The case is remanded for entry of appropriate judgment on the note with interest and foreclosure of the mortgage.

V. *Defendant Walsh.* Defendant Walsh focuses upon three assignments of error in his petition for further review. We address these in turn.

Walsh first contends that the trial verdict against him was rendered in violation of Iowa Rule of Civil Procedure 203. Subsection (b) of rule 203 requires that the jury bring its finding into the courtroom to be read aloud. Alternatively, subsection (c) of rule 203 allows the jury verdict to be sealed and not brought into the courtroom if both parties agree. The record reveals that all of the courtrooms in the courthouse were occupied with other trials when the jury reached its verdict. Understanding that by agreement of counsel the verdict was to be rendered without counsel present, the trial judge entered the jury room, examined the verdict to ensure all questions were properly answered, and then delivered the unsealed verdict to the

clerk. Nothing in the record indicates that the judge did anything to influence the jury's decision.

■ We do not endorse the trial court's action. Upon review of the record, however, we are satisfied with the conclusion of the court of appeals that, while rule 203 may have been technically violated, the trial judge's reception of the verdict did not result in any prejudice to the defendant.

Walsh next asserts that jury instruction number 22 concerning the defense of failing to read various documents before signing them did not present his theory of the case clearly and accurately to the jury. It was error, he maintains, to reject his proposed jury instruction in favor of that chosen by the trial court.

The court of appeals carefully compared the instruction offered by defendants with instruction 22 as given to the jury. While the trial court used its own wording, *see Knauss v. City of Des Moines*, 357 N.W.2d 573, 577 (Iowa 1984), its instruction addressed the necessary issues. We agree with the portion of the court of appeals opinion which stated:

> Upon viewing the jury instructions as a whole, we conclude that Instruction No. 22 fairly informed the Jury as to plaintiff's duties regarding reliance and duty to investigate. We find nothing inappropriate or misleading in Instruction No. 22.

■ Finally, while not contesting in his application for further review the adequacy of the evidence of fraudulent misrepresentation presented to the jury on the issue of compensatory damages, Walsh attacks the assessment of punitive damages against him. We have frequently stated that punitive damages are justified where a defendant acts maliciously. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 167 (Iowa 1984). Malice may be implied in cases where the defendant acts improperly with willful or reckless disregard for another's rights. *Id.* The trial record is replete with examples of Walsh's behavior that the jury could reasonably conclude showed reckless disregard for Linda's rights. We agree with the court of appeals that substantial evidence supported the submission of, and the jury verdict for, punitive damages against defendant Walsh. Trial court did not err in entering judgment thereon.

VI. *Disposition.* We conclude there were no reversible errors leading to the judgment against defendant Walsh. That judgment is affirmed. The trial court did err in failing to grant the motion for judgment notwithstanding the verdict of defendants Roach and Key City Bank and in not allowing foreclosure of the note and mortgage in favor of the bank. We therefore reverse those rulings and remand with instructions that judgment be entered consistent with this opinion. The decision of the court of appeals is vacated in part and affirmed in part. Costs in this court are taxed one-half to plaintiff and one-half to defendant Walsh.

COURT OF APPEALS DECISION VACATED IN PART AND AFFIRMED IN PART; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART.

All Justices concur except SNELL, J., who takes no part.