Henry CLARK and Fran
Clark, Appellees,

v.

Charles McDANIEL d/b/a Chuck's
Auto, Appellants,

and

Danny Pierce and Nancy
Pierce, Defendants.

No. 94–1306.

Supreme Court of Iowa.

April 17, 1996.

H. Michael Neary, Ottumwa, for appellants.

Robert M. Box, Ottumwa, for defendants.

William P. Goldstein, Fairfield, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and TERNUS, JJ.

LARSON, Justice.

Charles McDaniel d/b/a Chuck's Auto appeals and Henry and Fran Clark cross-appeal from a judgment in favor of the Clarks in an action based on fraud in McDaniel's sale of a used car. We affirm on both appeals, as modified.

The Clarks bought a Ford Taurus station wagon from a couple named Pierce, in June 1992, that they understood to be a 1989 model because that is how the Pierce's represented it. The Clarks soon found out that the car had been "clipped," *i.e.*, the rear half of a 1986 Taurus had been welded to the front half of a 1989 model.

The Clarks confronted the Pierces and demanded the return of their money, but the Pierces were unable or unwilling to do so. The evidence showed that the Pierces were not aware that the car had been clipped, and it soon became apparent that McDaniel, who had originally sold the car to the Pierces, was the culprit. After the Clarks discovered the true condition of the car, they continued to drive the car and eventually traded it in for a true 1989 Ford Taurus station wagon.

The Clarks brought suit against the Pierces and McDaniel. The Pierces cross-petitioned against McDaniel. After a bench trial, the court entered judgment in favor of the Clarks against McDaniel but dismissed their action against the Pierces. It found McDaniel liable for $5050 plus interest under "either" breach of contract or fraudulent misrepresentation theories. The court concluded that the Pierces could not be liable to the Clarks because they only relayed the information given to them by McDaniel. McDaniel appealed the finding of liability, and the Clarks cross-appealed the amount of dam-

ages awarded to them and from the court's dismissal of their suit against the Pierces.

### I. *The Law of Fraud.*

■ Fraud requires clear-and-convincing evidence of (1) materiality, (2) falsity, (3) representation, (4) scienter, (5) intent to deceive, (6) justifiable reliance, and (7) resulting injury and damage. *McGough v. Gabus,* 526 N.W.2d 328, 331 (Iowa 1995); *Sinnard v. Roach,* 414 N.W.2d 100, 105 (Iowa 1987); *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987).

McDaniel alleges error in the district court ruling on three of these elements. First, he argues that the statements he made to the Pierces did not falsely represent the condition of the car. Second, he argues that the Clarks did not justifiably rely on his statements because he only made the statements to the Pierces. Third, he argues that, even if the court concludes that he fraudulently misrepresented the car to the Clarks, the Clarks failed to prove damages.

■ The first three elements of a fraud claim are often treated as a single element and are referred to as fraudulent misrepresentation. *Sinnard,* 414 N.W.2d at 105. A representation need not be an affirmative misstatement; the concealment of or failure to disclose a material fact can constitute fraud. *Id.; Cornell,* 408 N.W.2d at 374. However, for concealment to be actionable, the representation must "relate to a material matter known to the party ... which it is his legal duty to communicate to the other contracting party whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances." *Sinnard,* 414 N.W.2d at 105 (quoting *Wilden Clinic, Inc. v. City of Des Moines,* 229 N.W.2d 286, 293 (Iowa 1975)).

There is no specific test for determining when a duty to reveal arises in fraud cases. *Sinnard,* 414 N.W.2d at 106. However, we have stated that

[a] misrepresentation may occur when one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth respecting a material fact involved in the transaction.

*Kunkle Water & Elec., Inc. v. City of Prescott,* 347 N.W.2d 648, 653 (Iowa 1984); *see also Sinnard,* 414 N.W.2d at 106 (applying the *Kunkle* analysis).

■ The district court found that McDaniel misrepresented the condition of the car, and in this law action our decision is whether that finding is supported by substantial evidence. The Pierces testified that McDaniel did not tell them that the car was clipped. They testified that McDaniel led them to believe that the car had low mileage because it was seldom driven and that two doors had been replaced only because they had been dented. McDaniel testified that he told the Pierces about the clip. A review of his testimony, however, suggests that he did not clearly reveal to the Pierces the extent of his repairs.

Q. Did you tell the Pierces that the car had been clipped together? A. I said clipped, yes.

Q. You used the word clipped now? A. I said the car had probably—The way I would have probably had said it, the car was damaged or wrecked and the car was clipped.

Q. You probably would have said it. Do you have a recollection that you used the word clipped? A. I wouldn't say I absolutely said clipped, but I showed 'em where the spots was. Now, average person, if you're showing them, ought to listen a bit and try to understand what you're trying to tell 'em.

. . . .

Q. You were telling about some minor cosmetic kinds of problems with the car? A. Yes.

Q. You never told 'em you put an '86 rear onto the front of an '89 Taurus wagon, did you? .... A. I didn't say I put a 1986 rear clip on this car and the car's an '89, no. I did tell them it was wrecked. It was damaged. We did clip it, and I started proceeding to show 'em what needed to be touched up and stuff like that.

Q. Why did you tell 'em it had been wrecked? A. Because you should tell anybody.

Further, the purchase agreement with McDaniel disclosed certain repairs, but failed to mention the significant fact that roughly one-half of the automobile being purchased was not a 1989 model.

We conclude that substantial evidence supports the trial court's finding that McDaniel misrepresented the condition of the car.

## II. *Justifiable Reliance.*

■ The key issue is whether the Clarks may justifiably rely on representations that McDaniel made to the Pierces. McDaniel contends that, since there was no direct contact between him and the Clarks, he cannot be liable to the Clarks for any misrepresentations.

The Clarks argue that direct contact is not required. Under the Restatement (Second) of Torts section 533 (1977) [hereinafter Restatement], persons who fraudulently misrepresent the truth can be held liable to third parties if they have a "reason to expect" their misrepresentation will be communicated to third parties.

Section 533. Representation made to a third person.

The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.

The maker's liability "includes those whom he has reason to expect [the misrepresentation] to reach and influence, although he does not make the misrepresentation with that intent or purpose." Restatement § 533 cmt. d. "Reason to expect" is defined objectively:

In order for the maker of a fraudulent misrepresentation to have reason to expect that it will reach third persons and influence their conduct it is not enough that he

recognizes, or as a reasonable man should recognize, the risk that it may be communicated to them and they may act upon it. . . . When only pecuniary loss results, the magnitude of the extent to which misrepresentations may be circulated and the losses that may result from reliance upon them has induced courts to limit the liability to the narrower rule stated in this section.

Virtually any misrepresentation is capable of being transmitted or repeated to third persons, and if sufficiently convincing may create an obvious risk that they may act in reliance upon it. This risk is not enough for the liability covered in this section. The maker of the misrepresentation must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach those persons and will influence their conduct.

Restatement § 531 cmt. d.

The Clarks argue that McDaniel had reason to expect that the Pierces would pass on his misrepresentations to third parties when they resold the car. They argue that because McDaniel was an experienced car salesman, the court should attribute knowledge to him that his cars would be resold and his fraud perpetuated.

■ Our court has not previously considered Restatement section 533. It has, however, recognized the tort of *negligent* representation as stated in Restatement section 552. *Beeck v. Kapalis,* 302 N.W.2d 90, 97 (Iowa 1981); *Larsen v. United Fed. Sav. & Loan Ass'n,* 300 N.W.2d 281, 287 (Iowa 1981); *Ryan v. Kanne,* 170 N.W.2d 395, 402–03 (Iowa 1969). The tort of negligent misrepresentation extends the liability of one who supplies false business information to all foreseeable users of the information, considering the end and aim of the transaction. *Beeck,* 302 N.W.2d at 97; *Ryan,* 170 N.W.2d at 403.

It is difficult to conceive of a commodity that is any more likely to involve knowledge by a seller "that there is an especial likelihood that [a misrepresentation] will reach [third] persons and will influence their con-

duct," Restatement § 531 cmt. d, than in the case of a motor vehicle. It is reasonable to charge a seller, especially a dealer in vehicles, with knowledge that his buyer will pass along information to a second buyer that has been provided by the original seller concerning such significant matters as "clipping" and as to the model year of the vehicle. In fact, as to the age of a vehicle, a subsequent buyer *must* be told the model year of the vehicle because the Iowa Administrative Code provides: "The applicant shall list on the application form [for a certificate of title] the model year of the vehicle." Iowa Admin.Code r. 761–400.3(5).

We believe that in this case these third-party buyers have satisfied the requirements of Restatement section 533, which we here adopt, in order to establish liability of the original seller.[1] Other jurisdictions support this view. *See, e.g., Pelster v. Ray*, 987 F.2d 514, 523 (8th Cir.1993) (applying Missouri law); *Varwig v. Anderson–Behel Porsche/Audi, Inc.*, 74 Cal.App.3d 578, 141 Cal.Rptr. 539 (Cal.App.1977).

### III. *Damages.*

■ McDaniel argues that the Clarks failed to adequately prove any damages. We summarily reject that argument. By McDaniel's own testimony, a clipped vehicle is worth at least $2000 less than one that has not been clipped.

■ The Clarks' cross-appeal contends that the damage award was inadequate. The Iowa rule for damages for fraudulent representations is a compromise between the benefit of the bargain and out-of-pocket rules. *Cornell*, 408 N.W.2d at 380. Damages for fraudulent representation are determined by finding "the difference between the value of what he has received in the transaction and its purchase price or other value given for it...." Restatement § 549, *cited in Cornell*, 408 N.W.2d at 380.

The Clarks paid $8500 for the clipped car in June 1992. When they traded it for another car, they received $2100 for it. The district court used the difference to determine the amount of damages due the Clarks.

■ The Clarks had the burden of proving they were damaged by the fraudulent representation. *McGough*, 526 N.W.2d at 331. To support a damage award they must have established their damages with some reasonable certainty. *Conley v. Warne*, 236 N.W.2d 682, 687 (Iowa 1975). Recovery is allowed as long as there is a reasonable basis in the record for inferring or approximating the amount of damages. *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 567 (Iowa 1987). We believe that the evidence of the purchase price and trade-in allowance was sufficient to support the court's assessment of damage:

> Pierces purchased the vehicle for $8995. They sold it to the Clarks for $8500. Clarks purchased a very similar vehicle of the same make and model for $7950 and were allowed *$2900* for the vehicle in question.

(Emphasis added.)

The court, while using the correct formula to compute damages, apparently applied the wrong trade-in allowance in making its computation. It is undisputed that the Clarks received $2100, not $2900 for their trade-in. We believe the court correctly computed the damages with the exception of the $800 erroneously added to the trade-in value, and the amount of the damages should therefore be increased by $800 to allow the Clarks a recovery of $5850. We modify the judgment accordingly.

### IV. *The Dismissal of the Clarks' Claim Against the Pierces.*

The Clarks cross-appeal from the court's dismissal of their breach-of-contract claim against the Pierces. They ask that the court order a rescission of the agreement because

1. As of January 1, 1993 (thus not applicable to the present case), transferors of motor vehicles in Iowa are required to provide damage disclosure statements to transferees. Iowa Code § 321.69(1) (1993). This statement must show "the total retail dollar amount of all damages to the vehicle during the period of the transferor's ownership of the vehicle." Iowa Code § 321.69(2). The maker of a false damage disclosure statement commits fraud under the statute. Iowa Code § 321.69(9).

the breach of the purchase agreement from the Pierces was substantial enough to defeat the object of the contracting parties. *See Beckman v. Carson,* 372 N.W.2d 203, 207 (Iowa 1985).

Rescission, an equitable remedy, is considered to be extraordinary relief. It is not available as a matter of right but only when it is necessary to obtain equity. *Potter v. Oster,* 426 N.W.2d 148, 151 (Iowa 1988). Three requirements must be met before rescission will be granted: (1) the injured party must not be in default, (2) the breach must be substantial and go to the heart of the contract, and (3) remedies at law must be inadequate. *Id.*

The general rule is stated:

> Where complainant seeking a rescission of his contract in equity has an adequate and complete remedy at law by the recovery of the consideration he has paid on the return of the property he has transferred, a court of equity will not ordinarily take jurisdiction merely for the purpose of declaring a rescission. Also, the remedies of cancellation of an instrument, or of a rescission, are not ordinarily provided where adequate relief is available in the form of a money judgment.

12A C.J.S. *Cancellation of Instruments* § 11, at 657 (1980).

The defendants filed their action and tried it at law. They do not contend that they lacked an adequate remedy at law. Further, their request for equitable relief in the way of rescission was not raised in the district court in their pleading or a motion under rule of civil procedure 179(b) and was therefore waived.

We modify the judgment against McDaniel by increasing it to $5850. As so modified, we affirm on both appeals. We remand to the district court for entry of a corrected judgment.

**AFFIRMED ON BOTH APPEALS, AS MODIFIED, AND REMANDED.**