**Shannon ARTHUR and Renee Van Arsdale, Appellants,**

v.

**James E. BRICK, Appellee.**

No. 95–2235.

Court of Appeals of Iowa.

April 30, 1997.

Dennis L. Puckett and Louis R. Hockenberg of Sullivan & Ward, Des Moines, for appellants.

Steven P. Brick and James E. Brick of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellee.

Heard by SACKETT, P.J., and CADY and VOGEL, JJ.

VOGEL, Judge.

Plaintiff buyers, Shannon Arthur and Renee Van Arsdale, appeal a district court ruling denying their petition seeking rescission, restitution, and damages arising out of a real estate contract.

***Rescission and Restitution.*** The buyers' rescission claim is an equitable claim on appeal. Our review of equity cases is de novo. Iowa R.App. P. 4. However, we give weight to the trial judge's findings of fact. *Qualley v. State Federal Sav. & Loan*, 487 N.W.2d 353, 355 (Iowa App.1992).

On July 21, 1994, Van Arsdale and Arthur as buyers entered into a purchase agreement with James E. Brick as seller. An amended purchase agreement required that Brick make certain repairs and enabled the buyers to inspect the furnace. The repairs were completed and the parties closed on the real estate contract on July 29, 1994. Arthur executed the real estate contract and Van Arsdale executed a guarantee agreement to assure performance on the contract. An $8250 down payment was made, and Arthur took possession of the property.

On August 30, 1994, after Arthur moved in, the basement flooded with water and sewage. Smith Sewer Service and the City of Des Moines were summoned to help stem the

flooding. As a result, Arthur and Van Arsdale discovered a drain in the back yard was illegally connected to the sanitary sewer. After buyers wrote to Brick on September 7, 1994 complaining of the flooding and sewage backup, Brick offered in his letters to buyers dated October 31, 1994, and November 9, 1994, to unhook the pipe to the sanitary sewer and make the proper connection. The buyers rejected these offers and would not allow Brick or his work crew onto their premises. Arthur remained in possession of the property but discontinued the installment payments on the real estate contract. Brick filed a notice of forfeiture. Buyers sought to enjoin Brick from proceeding with the forfeiture and filed a petition to rescind the contract and sought damages. Brick counterclaimed seeking damages for unpaid contract payments.

The buyers contend the district court erred in ruling they were not entitled to rescission, restitution, and damages. They assert Brick, and/or his agent, misrepresented the condition of the property by indicating on the disclosure statement there were no sewer problems when, in fact, the illegal connection to the sanitary sewer was made in 1994.

■ The parties look to the seven elements buyers must prove to recover under fraudulent misrepresentation. Those elements were delineated in *Robinson v. Perpetual Serv. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987):(1) Representation; (2) Falsity; (3) Materiality; (4) Scienter; (5) Intent to deceive; (6) Reliance; and (7) Resulting injury and damage. *Id.* The first three elements are usually treated as one element and are referred to as fraudulent misrepresentation. *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996). The *Hyler* court disposes of the scienter and intent to deceive elements where a party claims only rescission and restitution. *See generally Hyler v. Garner*, 548 N.W.2d 864 (Iowa 1996). In this case, however, buyers additionally sought damages based on false representation. We accordingly require that all seven elements of fraudulent misrepresentation be met.

■ The failure to disclose a material fact *known* to the person who has a legal duty to inform the other contracting person of the matter can constitute fraud. *Clark*, 546 N.W.2d at 592. No specific test in our case law exists for determining when a duty to reveal arises in fraud cases. *Id.; see Sinnard v. Roach*, 414 N.W.2d 100, 106 (Iowa 1987) ("Determinations of when a duty to reveal arises in a fraud case do not lend themselves to scientific formulation."). However, the Iowa Supreme Court has stated that "[a] misrepresentation may occur when one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth respecting a material fact involved in the transaction." *Clark*, 546 N.W.2d at 592 (quoting *Kunkle Water & Elec., Inc. v. City of Prescott*, 347 N.W.2d 648, 653 (Iowa 1984)).

Caveat emptor once precluded buyers of real estate from recovering damages in many cases as it was up to a purchaser to "examine, judge, and test it for himself, being bound to discover any obvious defects." *Swanson v. Baldwin*, 85 N.W.2d 576, 578, 249 Iowa 19, 22 (1957). The tendency in later cases has been to enlarge the responsibility of the seller and restrict the application of caveat emptor. *Peters v. Lyons*, 168 N.W.2d 759, 763 (Iowa 1969). We have now dislodged the antiquated concept of caveat emptor in most business transactions. *Mease v. Fox*, 200 N.W.2d 791, 794 (Iowa 1972); *see Kirk v. Ridgway*, 373 N.W.2d 491, 494 (Iowa 1985) (stating over the years the rule of caveat emptor appears to be diminishing, especially where it would work injustice). Today, the trend in our law has been to enhance the "obligations of agents and fiduciaries, functioning in positions of trust and confidence, to perform their duties in complete candor, honesty, loyalty and good faith." *Miller v. Berkoski*, 297 N.W.2d 334, 340 (Iowa 1980); *see Smith v. Peterson*, 282 N.W.2d 761, 767 (Iowa App.1979); *Holi-Rest, Inc. v. Treloar*, 217 N.W.2d 517, 525 (Iowa 1974).

Iowa Code section 558A furthers the trend away from caveat emptor by requiring a seller of real estate to complete a disclosure form which informs the purchaser of "the condition and important characteristics of the property and structures located on the prop-

erty...." Iowa Code section 558A.4(1). It also imposes liability on a transferor, broker, or salesperson if "that person has actual knowledge of the inaccuracy, or fails to exercise ordinary care in obtaining the information." Iowa Code § 558A.6(1). The standard of reporting is one of good faith:

> All information required by this section and rules adopted by the commission shall be disclosed in good faith. If at the time the disclosure is required to be made, information required to be disclosed is not known or available to the transferor, and a reasonable effort has been made to ascertain the information, an approximation of the information may be used.

Iowa Code § 558A.3(1).

█ Thus, for a buyer to prevail upon a claim based on misrepresentation, not only must the seven elements of fraudulent misrepresentation be met, but they are measured in conjunction with the standards for disclosure as required by section 558A.

█ When the purchase agreement was entered into, Brick completed the Seller Disclosure Statement as required by Iowa Code section 558A. Selected portions of that form are set out below, with Brick's responses in bold italics:

> Purpose of Statement: ... This statement shall not be a warranty of any kind by the seller or seller's agent and shall not be intended as a substitute for any inspection or warranty the purchaser may wish to obtain.
>
> Seller's Disclosure: As seller, I/We disclose the following information regarding the property and certify that this information is true and accurate to the best of my/our knowledge as of the date signed.
>
> ....
>
> Instructions to the Seller: ... (2) Report known conditions affecting the property.
>
> ....
>
> Appliances/Systems/Services: Good Working Order? City Sewer System. *Yes.*
>
> ....
>
> Property conditions, improvements & additional information:

> 1. Basement/Foundation: Has there been known water or other problems? *Yes.* If yes, please explain: *Water in basement after rains.*
>
> ....
>
> 6. Sewer: Any known problems? *No.*
>
> ....
>
> Other items: Are you as the Seller aware of any of the following:
>
> ....
>
> 3. Structural modifications, alterations, or repairs made without necessary permits or licensed contractors? *Yes.*
> 4. Physical problems such as: Settling, flooding, drainage or grading problems? *Yes.*
>
> ....
>
> If the answer to any of these is yes, please explain. Attach additional sheets, if necessary: *Remodeling was done in 93–94 without city permits—backyard has sewer that needs to be kept clean.*

(Emphasis added.)

The buyers testified they relied on the disclosure form. Brick was required to disclose any *known* sewer problems. He testified he knew of none and consequently disclosed none. He did disclose that remodeling work was done in 1993–94 without city permits and for that the buyers were on notice. Testimony from a neighbor indicated the illegal backyard drain connection was done by a workman but no evidence indicated that Brick was ever informed the hookup was improper. We refuse to impute that knowledge to Brick based on an independent contractor performing underground work on his property. We also note Brick did not live on the premises and was not intimately aware of any latent structural infirmities that may have existed. He properly disclosed all information of which he was reasonably informed.

Moreover, the testimony from both Arthur's real estate agent, Ballard, and Van Arsdale was that Brick's real estate agent, Madden, informed them the sump pumps were connected to the sanitary sewer drain. The connection was in plain view. Ballard testified she did not seek professional advice as to whether that was appropriate. Van

Arsdale and Ballard were also verbally apprised by Madden that they must make sure they keep the sump pumps running or there could be water in the basement, that there is sometimes flooding in the basement after it rains, and that the buyers need to keep the yard drain cleaned out as water collected in the back yard.

We fail to see how Brick or his agent made misrepresentations to buyers as we do not find the elements of misrepresentation have been met. We find Brick did not affirmatively misrepresent a fact nor did he falsely assert any condition of the premises calculated to induce buyers to enter into the purchase agreement.

Additionally, and significantly, we do not find there was sufficient evidence to support the buyers' claim that the hookup of the backyard drain or the sump pumps actually caused the backup and basement problem. The buyers' own expert, Mr. Smith, testified as follows:

Q: Based on your experience, what do you believe ... [the blockage in the city service line] was?

A: In that area I would have to say that it's probably tree roots.

Q: Okay. And as a result of the tree roots in the sewer, the sewer backed up?

A: Correct.

He also testified the sewer connection was "serious if you have an obstruction. If it's functioning, no." Thus, we are unwilling to conclude that the illegality of the hook-up was the cause of the sewer backup; we find it had more to do with the tree roots blocking the service line. When the blockage was removed, there were no further problems with the sewer backing up. If the illegal sewer hookup was not the cause of the problem, as buyers' expert, Mr. Smith indicated, then any damage buyers suffered was not caused by any material misrepresentation, nor did buyers rely on any misrepresented fact.

■■■ *Breach of Contract and Mutual Mistake.* Buyers' breach of contract allega-

tion was not directly raised on appeal and is hereby waived. Mutual mistake was not raised in the district court and is therefore not preserved for our review.

*Injunction of Forfeiture.* On January 20, 1995, pursuant to buyers' application to enjoin Brick from forfeiting the contract, the district court entered an order temporarily restraining Brick from pursuing the forfeiture with the bond to be the contract payments to the buyers' attorney's trust account. On May 2, the court continued the temporary injunction but required payment to Brick of the amounts in the trust account for October 1994 through April 1995. Additional contract payments were to be made to Brick or, if buyers relinquished the property, to their attorney's trust account.

Arthur moved out about two weeks later without complying with the May 2 order. The court affirmed that order in an order filed May 25. Brick's counsel subsequently informed the court buyers were missing the April and May payments. On July 12, the court found buyers to be in clear violation of the prior orders and gave them until July 18 to meet the bond requirement by making the necessary payment into the trust account or posting a bond in an amount equal to 125% of the contract price with the clerk of court.

On August 18, the court ordered buyers to post a $5000 bond by August 23 or the temporary injunction would be dissolved. They failed to comply and the court dissolved the temporary injunction on August 25. That same day, Brick served a second notice of forfeiture on the buyers.

Brick filed a counter-claim for breach of contract in this case on February 15, 1995. Buyers claim Brick's efforts to forfeit the contract were inconsistent with his counter-claim for money due under the contract. Buyers cite *McBride v. Hammers*, 418 N.W.2d 60, 63 (Iowa 1988) for the proposition that a seller may not elect to pursue inconsistent remedies based on both affirmance, e.g., a damages suit, and disaffirmance, e.g., forfeiture of a contract. However, Brick asserted an alternative claim once he was preclud-

ed by the court from forfeiting the contract pursuant to buyers' injunction. When Brick was allowed to forfeit the contract, buyers' petition was dismissed and with it Brick's counter-claim for past due contract payments.

Having reviewed all claims, we affirm the district court.

**AFFIRMED.**