Ricky SEDGWICK and Janet Sedgwick, Appellants,

v.

Joel A. BOWERS, Individually and as Trustee of the J.A. & M.E. Bowers Living Trust dated June 14, 1999; Mary Ellen Bowers, Individually and as Trustee of the J.A. & M.E. Bowers Living Trust dated June 14, 1999; and Associates Relocation Management Co., Inc., a Colorado Corporation, Appellees.

No. 03–0282.

Supreme Court of Iowa.

June 16, 2004.

David J. Franks of Franks & Roeder, Davenport, for appellants.

Dana M. Craig of Lane & Waterman, Davenport, and James C. English of Le-Boeuf, Lamb, Greene & MacRae, L.L.P., Pittsburgh, Pennsylvania, for appellees.

LARSON, Justice.

Ricky and Janet Sedgwick had water problems in their Bettendorf home soon after they bought it in November 2000. They investigated and found the prior occupants, defendants, Joel and Mary Ellen Bowers, had also had water problems. However, when the Bowers sold the house, they had falsely represented in their disclosure statements required by Iowa Code section 558A.2(1) (1999) that they had never had water problems. Sedgwicks sued Bowers, as well as Associates Relocation

Management Company, Inc., an intermediate buyer. The suit initially was filed in state court, removed to federal court, then remanded back to the Iowa District Court. The district court dismissed the action, and the plaintiffs appealed. We affirm as to the court's dismissal of the suit against Associates and reverse and remand as to the suit against Bowers.

## I. *Bowers' Purchase and Modification of Property.*

The Bowers bought the house in 1998 and built an addition to it in 1999. In the process of that construction, a drainage swale directing water away from the house was blocked and water began to pool against the back of the house, according to the trial court's findings. The Bowers experienced water leakage at the point where the new addition met the existing wall. In the spring of 2000 surface drainage overflowed a window well, ran into the basement, and soaked the carpet.

## II. *The Disclosure Statements.*

Mary Ellen Bowers was transferred out-of-state in connection with her job, and the Bowers listed their home for sale with Ruhl and Ruhl, a real estate company, in early July 2000. At that time, the Bowers completed and signed a mandatory real estate disclosure statement, and despite the fact it was only a few weeks after their last water problem, they denied they had experienced any water problems.

This disclosure statement asked:

Basement/Foundation: Any Known water or other problems? [The Bowers circled "No"].

If yes, explain frequency and extent of problem, if known. [No response].

Any known repairs/replacements? [The Bowers circled "No"].

The Bowers were not successful in selling the property through Ruhl and Ruhl, so they decided to take advantage of Mary Ellen's employer's program of having a relocation facilitator, Associates, buy it from Bowers and sell it to a third party. Associates bought the house from Bowers under a "Home Sale Agreement" on August 11, 2000, and sold it to Sedgwicks, the plaintiffs. Associates had never occupied the house.

In the "Home Sale Agreement" executed by Bowers with Associates, Bowers again stated they had experienced no water problems. A disclosure statement signed August 11, 2000, stated:

Seller's disclosure: Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller hereby specifically makes the following representations based on the Seller's knowledge at the signing of this document. *The Seller authorizes the agent to provide a copy* of his statement to any person or entity in connection with any actual or anticipated sale of the property. The following are representations made by the Seller and are not the representations of the Agent. Seller's agent also has no independent knowledge of the condition of the property except as noted by the Seller below.

Instructions to the Seller:

(1) Fill in ALL blanks.

(2) Report known conditions affecting the property.

(3) Attach additional pages with your signature if additional space is required.

(4) Complete this form yourself.

(5) If some items do not apply to your property, write NA (nonapplicable). If you don't know the facts, write UNKNOWN....

Property conditions: improvements & additional information:

1. Basement: Has there been evidence of water? Yes ___ No ___ [The Sellers checked "No"].

   Under "Other Items," the form inquired. . . .

Are you as the Seller aware of any of the following:

. . . .

4. Settling, flooding, drainage or grading problems? [The Sellers checked "No"].

5. Major damage to the property from fire, wind, floods, or landslides? [The Sellers checked "No"].

(Emphasis added.)

Bowers signed a third disclosure statement that was furnished by Associates to Sedgwicks on September 25, 2000. That statement asked these questions and brought these responses:

B. Please indicate if there are current defects/malfunctions/problems in, or if you are aware of previous repairs to, any of the following items:

. . . .

Foundation [Answer "No"].
Basement [Answer "No"].

. . . .

D. Are you aware of any of the following? (Past OR Present)

. . . .

5. Any flooding, leakage or dampness in the basement and/or crawl space. ["No"].

6. Any water damage inside or outside the home? ["No"].

7. Any drainage or grading problems or standing water? ["No"].

Bowers admitted at trial that these statements were false.

All three disclosure statements were provided by Associates' representatives to Sedgwicks on September 25, 2000. Sedgwicks closed on the property and moved in on November 6, 2000.

### III.  *Condition of the Home.*

Janet Sedgwick testified that

every single rainstorm that came, we had water seeping in walls or coming in where the wall met the floor in the sump pump room, or water around that thing, oozing mud coming in the wall, just with every single rainstorm.

Sedgwicks were able to identify specific dates when water problems occurred. They included February 21, 2001, and February 23 and 24, 2001. They were unable to identify other specific dates because, as Janet Sedgwick testified, they had water problems after "every single rainstorm."

### IV.  *The Disclosure Statute.*

Iowa Code chapter 558A is entitled "Real Estate Disclosures." Under section 558A.2(1),

[a] person interested in transferring real property, or a broker or sales person acting on behalf of the person, shall deliver a written disclosure statement to the person interested in being transferred the real property. The disclosure statement must be delivered prior to either the transferor making a written offer for the transfer of the real property, or accepting a written offer for the transfer of the real property.

Under section 558A.3(1),

[a]ll information required by this section and rules adopted by the commission shall be disclosed in good faith.

### V.  *Elements of Fraud.*

The elements for recovery in a fraud action in general are: (1) represen-

tation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive, (6) reliance, and (7) resulting injury and damages. *Robinson v. Perpetual Servs. Corp.*, 412 N.W.2d 562, 565 (Iowa 1987). The first, second, and third elements (representation, falsity, and materiality) are usually treated as one element and are referred to as fraudulent misrepresentation. *Arthur v. Brick*, 565 N.W.2d 623, 625 (Iowa Ct.App.1997). The plaintiff must prove these elements by a preponderance of the clear, satisfactory, and convincing evidence. *Robinson*, 412 N.W.2d at 565. Our court of appeals has held that these elements are required for recovery under an action based on chapter 558A, and we agree. *See Arthur*, 565 N.W.2d at 625–26.

## VI. *The District Court's Ruling.*

The district court's first basis for denying the plaintiffs' claim was that the plaintiffs had failed to establish a fraudulent misrepresentation because

> Bowers acknowledge that they did not disclose the previous water problems but contend that their failure to do so was not the cause of Sedgwick[s'] damage. They argue they never had an incident where water overflowed the sump pit and got the basement wet, so their failure to disclose the two incidents of water they experienced, while it was a false representation in light of the answers they put in the Seller Disclosure of Property Condition forms, was not a material failure to disclose. The argument has compelling logic. Because the information Bowers had, but failed to disclose, resulted in no damage to Sedgwicks, it cannot have been a material misrepresentation for Bowers to fail to disclose it.

■ We reject this reasoning because the court's findings are not supported by substantial evidence. The evidence is undisputed that the false statements *were* disclosed to Sedgwicks. In fact, all three disclosure statements were furnished to Sedgwicks by Associates before Sedgwicks closed on the house. While Bowers argue, and the district court ruled, that the surface water came in at different places when Bowers owned the house than when the Sedgwicks owned it, it is clear that the cause of all of the water problems was excessive surface drainage against the back of the house. It is also undisputed that the surface water became a problem once Bowers modified the swale that had directed the water around the house. Bowers concede they poured a concrete apron along the foundation as a precaution against surface drainage into the home.

■ The second basis for the court's dismissal of the suit is that the plaintiffs had failed to prove scienter and intent to deceive. The court stated:

> Because of the contractual arrangement between Mary Ellen Bowers' employer and Associates, the purchase of the house was based solely on the appraisals to determine the market value of the house, and the home inspection report prepared at the direction of Associates. Gwen Crisler, an employee of Defendant Associates, responsible for supervising this transaction, testified that the purchase price of the property was based on the appraisals, and that it was unlikely that the real estate appraisers who evaluated the market value of the house even saw the Seller Disclosure Property Condition forms that were prepared by Bowers.

In essence, the Bowers argue, and the district court ruled, that the Sedgwicks were not the buyers from Bowers; Associates was the buyer, according to Bowers' argument. However, the evidence is undisputed that, when Bowers signed the agreement for Associates to buy and resell

the home, Bowers agreed that other buyers would be furnished with copies of the disclosure statements. Sedgwicks in fact received copies of all of the disclosure statements. In the "Home Sale Agreement" between Bowers and Associates, this paragraph appears:

Seller [Bowers] acknowledges that [Associates] has advised Seller that [Associates] intends to rely upon all written and oral representations and Disclosures as to the truth and accuracy thereof and will provide and disclose said information to prospective buyers. Seller agrees, if said information is materially false, inaccurate or incomplete, Seller will be held liable for and Seller agrees to hold [Associates] harmless from any damages, claims, losses, costs, expenses, suits, settlements and causes of action, including, but not limited to, attorney's fees, incurred on account of said misrepresentation, falsity, inaccuracy or withholding of material information. *Seller hereby authorizes [Associates] to provide to prospective buyers Seller's written Disclosures and to advise prospective buyers that certain information relating to the Property has been received by [Associates] in writing from Seller and that [Associates] does not warrant or guarantee such information.*

(Emphasis added.) Under these circumstances, Associates acted merely as a conduit in furnishing the disclaimer information to Sedgwicks. It is clear that Bowers intended that future buyers from Associates would be entitled to rely on the disclosure statements.

The plaintiffs have established their case by a preponderance of the clear, satisfactory, and convincing evidence introduced. We conclude that the district court erred in its legal conclusion that Sedgwicks were not buyers under the disclosure statute. Further, its finding that Bowers had not misrepresented the condition of the property is not supported by substantial evidence. We therefore reverse and remand as to the defendants, Bowers, for retrial.

■ We affirm as to Associates because, under Iowa Code section 558A.6,

[t]he transferor, or a broker or salesperson, shall not be liable under this chapter for the error, inaccuracy, or omission in information required in a disclosure statement, unless that person has actual knowledge of the inaccuracy, or fails to exercise ordinary care in obtaining the information.

No evidence was introduced to establish that Associates had any actual knowledge of the inaccuracies in the disclosure statements and no evidence that Associates failed to exercise ordinary care in obtaining the information. We reject Bowers' argument that Associates, in effect, adopted the false statements as part of their agreement with Bowers. We therefore affirm the dismissal of the case as to Associates.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**