(2008)
Dale STEWART, Petitioner
v.
Robin KNAB, Respondent.
No. C-1-03-201.
United States District Court, S.D. Ohio, Western Division.
April 17, 2008.

ORDER
HERMAN J. WEBER, Senior District Judge.
This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254. The matter is before the Court upon the Report and Recommendation of the Magistrate Judge (doc. no. 43) to which neither party has objected.
The Court finds that the Magistrate Judge has accurately set forth the applicable law and has properly applied it to the particular facts of this case. Accordingly, in the absence of any objection by petitioner, this Court accepts the Report as uncontroverted.
Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby ADOPTS AND INCORPORATES BY REFERENCE into this Order his Report and Recommendation dated February 29, 2008. The "more narrow" due process claim remanded by the Sixth Circuit for additional proceedings is DENIED with prejudice. This case is TERMINATED on the docket of this Court.
A certificate of appealability shall not issue with respect to the sole narrow claim remanded by the Sixth Circuit because petitioner has failed to make a substantial showing of the denial of a constitutional right that is remediable in this proceeding. See 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b). Petitioner has not shown that reasonable jurists could debate whether the claim should have been resolved in a different manner or that the issues presented are "adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 323-324, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)) (in turn quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)).
With respect to any application by petitioner to proceed on appeal in forma pauperis, the Court CERTIFIES pursuant to 28 U.S.C. § 1915(a) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, DENIES petitioner leave to proceed on appeal in forma pauperis upon a showing of financial necessity. See Fed. R.App. P. 24(a); Kincade v. Sparkman, 117 F.3d 949, 952 (6th Cir. 1997).
IT IS SO ORDERED.

REPORT AND RECOMMENDATION
TIMOTHY S. HOGAN, United States Magistrate Judge.
Petitioner is an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio. In September 2000, he was convicted by the Butler County, Ohio, Court of Common Pleas upon entry of guilty pleas to two counts of sexual battery in violation of Ohio Rev.Code § 2907.03(A)(9), as charged in a bill of information.[1] (See Doc. 5, Exs. A-B). In October 2000, petitioner was sentenced to consecutive four (4) year prison terms totaling eight (8) years. (Id., Ex. D). He was re-sentenced to the same terms of imprisonment in August 2001, after an initial appeal resulted in a remand to the trial court for re-sentencing. (Id., Ex. H).
In March 2003, after exhausting state court remedies, petitioner filed the instant federal habeas corpus petition with the assistance of counsel. In the petition filed pursuant to 28 U.S.C. § 2254, petitioner alleged two grounds for relief challenging his sentence, including the claim that he was denied due process when he was not given "the opportunity to read and rebut sentencing evidence relied upon by the Sentencing Court that was contained in victim impact statements." (See Doc. 1, ¶¶ 12-13).
On November 4, 2005, 2005 WL 5835544, the Court adopted the undersigned's Report and Recommendation to deny the petition with prejudice because petitioner had not demonstrated, as required under 28 U.S.C. § 2254(d), that the state court's adjudication of his claims was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. (See Docs. 8, 15-16). Specifically, the Court rejected petitioner's due process claim, because in non-capital cases, the United States Supreme Court has clearly established only that the sentence cannot be based on "erroneous information," not that full disclosure of pre-sentence information is constitutionally required. (See Doc. 15, pp. 6-9). The Court alternatively held that "[a]ssuming, arguendo, that the trial court erred in this case, the court's failure to provide the victim impact statements to the defense was harmless error . . . because while the judge considered the statements, `the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI' which petitioner had received." (Id., p. 11).
The Court concluded that a certificate of appealability should issue with respect to petitioner's due process claim. (Id., p. 14). In a separate order issued the same date, the Court also "reluctant[ly]" granted petitioner's unopposed motion to expand the record for appeal purposes and directed respondent to file under seal "the pre sentence report and victim impact statements that were made part of the record before the Ohio Court of Appeals on direct appeal." (Doc. 13).
In granting petitioner's motion to expand the record "out of an abundance of caution and in the interests of a complete record," the Court pointed out that the motion was based on petitioner's "faulty interpretation of the Report and Recommendation" to the extent the Court had alternatively concluded that the failure to provide the victim impact statements to defense counsel amounted to harmless error based on the state appellate court's factual finding, presumed correct under 28 U.S.C. § 2254(e)(1), that "the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological reports and the [pre-sentence report]" provided to defense counsel. (Doc. 13, pp. 2-3). The Court reasoned in pertinent part:
In the pending motion, petitioner misinterprets the Magistrate Judge's statement as indicating that the psychological reports and the presentence report, which he had access to at sentencing, contain the information that "was concealed from him in the secret victim impact statement." . . . In his objections to the Report and Recommendation, petitioner similarly assumes that the Magistrate Judge asserted that the PSI and the psychological reports duplicated the information in the victim impact statement and on this basis, petitioner takes issue with his findings. . . . Petitioner requests that this Court order respondent to expand the record to include the pre-sentence report and the victim impact statements purportedly to determine whether the withheld information was otherwise revealed in the PSI and psychological reports.
However, the Report and Recommendation did not indicate that the information which was contained in the victim impact statements was mirrored in the PSI or psychological reports. What it did say was that the "facts" that the judge ultimately relied on in sentencing as reflected in his sentencing findings were contained in the PSI and psychological reports (documents to which petitioner did have access at sentencing), based on the finding of fact determined by the Ohio Court of Appeals which this court may presume to be correct
(Id., p. 2) (emphasis added).
Apparently, the custodian of the presentence report and victim impact statements refused to comply with the Court's order granting petitioner's motion to expand the record. The documents, therefore, were not made part of the record on appeal.
On October 9, 2007, 503 F.3d 488, the United States Court of Appeals for the Sixth Circuit reversed this Court's Order and Judgment of November 4, 2005 and remanded the matter for additional proceedings "with further instructions that the writ should be granted if the State fails to supplement the record as ordered by the district court within forty-five (45) days of the date of this opinion."[2] (Doc. 21) (emphasis in original). In so ruling, the Sixth Circuit agreed with the District Court decision to the extent that in a non-capital case such as this, "there is no clearly established federal constitutional right to full disclosure of all information used by a trial judge in determining a defendant's sentence[,]" and therefore, "the Ohio courts did not act contrary to clearly established federal law, nor did they unreasonably apply this law, in rejecting [petitioner's] claim of a due process entitlement to disclosure of the victim impact statements used in his sentencing." (Id., pp. 491-92, 493-99).
However, the Sixth Circuit found that there was "some support" in the record for petitioner's "more narrow" claim, which does implicate due process concerns recognized by the Supreme Court, that "the state trial court's sentencing decision was impermissibly influenced by materially false or misleading information contained in the victim impact statements that were withheld from [petitioner] and his counsel." (Id., p. 498).
The Sixth Circuit specifically referred to two examples in the record of the trial court's possible reliance on "false or misleading information," which petitioner had asserted "could only have come from the victim impact statements:" (1) "the trial court's reference at sentencing to four victims, whereas only two victims were mentioned in the bill of information filed by the prosecutor and at the subsequent hearing at which [petitioner] entered his guilty plea;" and (2) "the trial judge[']s statements at sentencing indicating that [petitioner's] criminal activity spanned perhaps as much as a five-year period, but the bill of information stated only that [petitioner's] offenses occurred `[o]n or about 1998.'" (Id.).
The court continued in pertinent part:
If the victim impact statements were indeed the source of this information, and if this information were deemed materially false, then [petitioner] seemingly could establish a violation of the due process right. . . . It is clear from the record that the trial judge specifically considered the victim impact statements in sentencing [petitioner]. Moreover, false information about additional victims and additional time periods during which [petitioner] engaged in criminal activity certainly would appear to be "material," particularly where the trial judge repeatedly referred to this information in determining [petitioner's] sentence.. . .
. . . . While [petitioner] posits that the sentencing court's determinations regarding the number of victims and the time span of his criminal activity must have been based upon false information contained in the victim impact statements, the only way to test this assertion is to review the victim impact statements themselves. By the same token, we have no way to confirm the State's contrary assertion in its appellate brief that all of the "facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI which the defense had received," where neither the victim impact statements nor the psychological evaluations and the PSI are part of the record on appeal. Under these circumstances, we cannot say whether the victim impact statements necessarily were the source of any materially false information relied upon by the sentencing court, or whether any such information instead could have been gleaned from sources that [petitioner] and his counsel had an opportunity to review and challenge at sentencing.
(Id., p. 499-500) (emphasis in original).
The court reasoned further:
. . . . Because the federal court record does not contain any of the pertinent materials reviewed by the Ohio Court of Appeals in making its findings  i.e., the victim impact statements, the psychological evaluations, and the PSI  neither we nor the court below can possibly determine whether the state court's findings were "unreasonable" in light of a missing evidentiary record. Instead, we are left with only the parties' competing assertions that the trial court's sentencing determination was or was not based in part on information that was uniquely culled from the victim impact statements.
* * *
It is difficult to see, under the present record, how a court could declare with any degree of confidence that any due process violation was harmless. As noted, the record does indicate with sufficient clarity that the state trial court considered the victim impact statements in determining [petitioner's] sentence. What it does not reveal, however, is whether the Ohio Court of Appeals was correct in concluding  and, in turn, whether the district court properly accepted as the factual predicate for its determination of harmless error  that "the facts ultimately relied upon by the trial court in sentencing [petitioner] were otherwise reflected in the psychological evaluations and the PSI." . . . As explained, the reasonableness of this finding is beyond the power of this court to ascertain, where the evidence upon which it rests is missing from the federal court record. If, in fact, any information that the sentencing court culled from the victim impact statements could also be found in other materials that were disclosed to [petitioner] and his counsel, then it could properly be said that [petitioner's] lack of access to the victim impact statements was harmless, where the availability of other, comparable materials ensured his opportunity to challenge any materially false information upon which the trial court might have relied in determining his sentence. Unfortunately, this factual question is unanswerable under the present record.
(Id., pp. 500-02) (emphasis in original).
The Sixth Circuit concluded that in light of the record evidence supporting the "more narrow" due process claim, a remand was "necessary both to determine whether a due process violation occurred and to consider whether any such error was harmless" under Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). (Id., p. 503) (emphasis in original). Recognizing that petitioner could not "fairly be expected to establish the necessary elements of his [due process] claim" absent supplementation of the record as previously ordered by the District Court on November 4, 2005, the Sixth Circuit further ordered the State to comply with that prior order within 45 days in order to prevent the granting of the habeas corpus writ to petitioner by default. (Id., pp. 502-04).
The state trial judge, the Honorable Keith M. Spaeth, complied with the Sixth Circuit's order for further supplementation of the record within the requisite time frame to the extent he provided this Court with the pre-sentence investigation report (PSI) and victim impact statements submitted before petitioner's initial sentencing hearing in October 2000. (See Docs. 24, 27).[3] On November 13, 2007, respondent's motion to seal these records for in camera inspection (Doc. 24) was granted,[4] and the matter was recommitted to the undersigned Magistrate Judge for Report and Recommendation in accordance with the Sixth Circuit's mandate. (Doc. 26).
Upon initial in camera review of the documents filed under seal, as well as the transcript of the petitioner's re-sentencing hearing, the undersigned was concerned that the "record filed under seal may not be complete," because it appeared an additional victim impact statement was submitted to the trial court before the resentencing hearing on August 16, 2001. (See Doc. 30, p. 2). Therefore, on January 15, 2008, an Order was issued directing the Butler County Common Pleas Court and respondent to provide "any victim impact statement. . . not yet produced to this Court, which was filed in the state trial proceeding after petitioner's original sentencing hearing in October 2000, but before his resentencing in August 2001." (Doc. 30).
In response to the January 15, 2008 Order, respondent submitted for manual filing an additional victim impact statement dated August 14, 2001, which apparently had been inadvertently omitted from respondent's prior submissions. (Doc. 38). By Order issued February 8, 2008, the additional victim impact statement was filed under seal for in camera inspection to be "returned to the attention of the Honorable Keith M. Spaeth of the Butler County Comm Pleas Court `along with records previously filed under seal . . . after disposition and conclusion of appellate review of this case.'" (See Docs. 37, 42).
Respondent also filed a motion to supplement the record "with a recording of the August 16, 2001 sentence hearing and the Certificate of Trial Judge Keith M. Spaeth;" in the certificate attached to the motion, Judge Spaeth avers:
I was the sentencing judge in the case of State v. Stewart, Case No. CR00-08-1090, in the Butler County Court of Common Pleas. I recently reviewed the transcript of the sentencing hearing held on August 16, 2001, in that case. According to the transcript, p. 48, in discussing the harm inflicted by the defendant on the victims and their families, the transcript reflects that the Court stated "four innocent kids." I actually said "poor" innocent, not "four" innocent kids. On January 16, 2008, I listened to a recording of the sentencing hearing. The recording indicates that I said "poor" innocent kids rather than "four" innocent kids.
At the time of sentencing and resentencing, I did not believe there were four victims in the case, I knew there were 380 F.3d at 507 (Garland, J., dissenting). The "cardinal principle of statutory construction," however, is "to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section." Bennett v. Spear, 520 U.S. 154, 173, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal citations, quotations, and alterations omitted). The FCA cannot be read so as to make the meanings of subsections (a)(1) and (a)(2) indistinguishable.
Sanders, 471 F.3d at 616. This court, likewise, recognized above the principle that the differences in language among the first three subsections of § 3729(a) must be assumed to give those subsections different meanings. The court in Sanders ultimately held "that while liability under § 3729(a)(1) turns on whether a claim has been presented to the government, subsections (a)(2) and (a)(3) do not require such a showing," thus agreeing with the portion of Totten that is pertinent for present purposes. Id. at 622. In so holding, the Sixth Circuit Court of Appeals held that the remedial purposes of the FCA, described in United States v. Neifert-White Co., 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968), were not contrary to its reading of subsection (a)(1), because subsections (a)(2) and (a)(3) provided broader scope to the FCA than subsection (a)(1), thereby serving the remedial purposes of the FCA as a whole. Id. at 618-21.[4]
Thus, contrary to the government's assertions, Sanders does not reject the "presentment" requirement for § 3729(a)(1) claims as defined in Totten, nor has the government presented any other convincing reason for rejecting the construction of that requirement in Totten. Indeed, this court finds that the "presentment" requirement for a claim pursuant to § 3729(a)(1), as defined in Totten and Sanders, is in keeping with the plain meaning of that statutory provision. Thus, the government must prove that Hawley presented a claim or knowingly assisted another to present a claim to an officer or employee of the United States Government or a member of the Armed Forces of the United States for payment or approval. 31 U.S.C. § 3729(a)(1).
Again, the government has alleged, and its evidence tends to prove, only that Hawley "presented" or "caused to be presented" false claims to NCCI, which were paid by NCCI, then NCCI was reimbursed by the FCIC, the government instrumentality. Under Totten and Sanders, that is not enough to sustain a claim under § 3729(a)(1), as a matter of law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." Celotex, 477 U.S. at 322, 106 S.Ct. 2548; In re Temporomandibular Joint, 113 F.3d at 1492. Under the circumstances, the government cannot meet its burden of proof on the first element of its § 3729(a)(1) claim as a matter of law and, consequently, Hawley, not the government, is entitled to summary judgment on that claim.[5]

3. The "false record or statement" claim pursuant to § 3729(a)(2)

a. Elements of the claim
In Count Two, the government asserts a second FCA claim, this time pursuant to § 3729(a)(2). Section 3729(a)(2) imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C, § 3729(a)(2). The Seventh Circuit Court of Appeals has identified the elements of a § 3729(a)(2) claim as the following: "`(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false.'" United States ex rel. Fowler v. Caremark RX, L.L.C., 496 F.3d 730, 741 (7th Cir.2007) (quoting United States ex rel. Creivs v. NCS Healthcare of Illinois, Inc., 460 F.3d 853, 856 (7th Cir.2006), in turn quoting United States ex rel. Gross v. AIDS Research Alliance-Chicago, 415 F.3d 601, 604 (7th Cir.2005)). As mentioned above, the Sixth Circuit Court of Appeals has recognized that § 3729(a)(2) does not require proof that the false record or statement was presented to the government, but it does require proof that the false claim to which the false record or statement related was actually "paid or approved" by the government. Sanders, 471 F.3d at 617-18.

b. The government's § 3729(a)(2) claim
The government contends that there is no genuine dispute that the insurance applications, acreage reports, and production worksheets were false, in light of Kluver's plea agreement, the Windquists' pretrial diversion agreements, and Ed Marshall's settlement agreement. As to Hawley's knowledge of the falsity of these "reports or statements"  a matter not reached in the court's analysis of the government's § 3729(a)(1) claim in this case  the government contends that Hawley knew that Donald Kluver was the true owner of the crop on the South Dakota Crop Land in 2000, because, for example, Russell Hawley and Kluver were longtime friends, they had had various business dealings, Hawley had put a private hail insurance policy on the South Dakota Crop Land in Kluver's name, and Hawley knew or should have known that Ag Services was financing farming operations on the South Dakota Crop Land in the name of Donald Kluver, because Hawley had discussions with the Ag Services lender and was in possession of assignments of indemnities from the Windquists. The government also alleges that, even though most of the documents were not signed in Hawley's presence, a "quick look" at the crop insurance documents would have revealed that the Windquists' signatures were forged, for example, because Sydney Windquist's first name was misspelled "Sid."
Similarly, the government argues that, for the 2001 crop, Hawley knew or should have known that the application from Ed Marshall provided by Hoffman was false. The government points out that Russell Hawley also had a long history with the Hoffmans and knew that they were in financial trouble and under criminal investigation; that Hawley should have known that Hoffman was the true operator of the South Dakota Crop Land in 2001, even though Hawley had been told that the Hoffman's 19-year-old son was going to custom farm the crop land; and Russell Hawley had never met Marshall and Hawley knew or should have known that Marshall did not sign the crop insurance application prior to the March 15, 2001, deadline.
Hawley, however, denies that the government has established the "knowledge" element of its § 3729(a)(2) claim as a matter of law. Among other things, Hawley contends that the federal crop insurance and private hail insurance policies for 2000 were not for the "same" land, because the crop insurance policies insured only the land in Tripp County, while the private hail insurance policies insured both the Tripp County farmland and the Melette County farmland. Hawley also contends that the federal crop insurance policies preclude custom farmers from purchasing such insurance, but the private hail policies do not, so that Kluver could have had an insurable interest for purposes of the private hail insurance policies, even if he did not have an insurable interest for purposes of the federal crop insurance. Hawley also contends that he reasonably believed that the Windquists had experience in farming and had a valid farming arrangement with Kluver, in the form of a lease or sublease, under which Kluver was going to provide the necessary equipment and inputs and perform custom farming operations, with both the Windquists and Kluver obtaining financing for the farming operation.
Similarly, Hawley contends that, in 2001, Russell Hawley knew that Mark and Sue Hoffman, as well as others, wanted to farm the South Dakota Crop Land, if they could obtain adequate financing. As of the closing date for federal crop insurance, March 15, 2001, anyone who expected to have an insurable interest in the crop could apply for the insurance, so when Mark Hoffman hand-delivered an application apparently signed by Ed Marshall, the owner of the South Dakota Crop Land, on March 14, 2001, Hawley had no reason to be suspicious, especially when Hoffman indicated that Marshall would be farming the land, if no one else could obtain financing to lease it. Hawley points out that it faxed or mailed Marshall "new producer" forms and information, and Marshall faxed them back, indicating that he was the producer on the South Dakota Crop Land, which he presumably would not have done, if he had not signed the application for crop insurance. Hawley also contends that there was no reason for him to be suspicious when Hoffman decided to purchase private hail insurance on the crop for 2001, when Marshall was only able to purchase federal crop insurance for the land in Tripp County, but not Melette County, because by doing so, Hoffman avoided a risk of nonpayment for custom farming operations. Thus, Hawley contends that it reasonably believed that Hoffman and Marshall both had insurable interests for their respective forms of insurance. Hawley also argues that the government has failed to support its contentions that "regulations" required Hawley to "verify" or "certify" any of the information on any of the applications, records, or statements at issue for this claim.
The court's review of the record reveals that, as in Taber Extrusions, the evidence concerning the "knowledge" element is subject to genuine issues of material fact. See Taber Extrusions, LP, 341 F.3d at 845-46. As in Taber Extrusions, "[t]he government certainly has evidence creating the requisite inference" that Hawley knew the records or statements in question were false, recklessly disregarded the truth or falsity of the records or statements, or was deliberately ignorant of their truth or falsity. Cf. id. at 845. At the same time, Hawley has presented contrary evidence. Id. As in Taber Extrusions, "[d]epending on factors such as witness credibility, a reasonable jury might find" either that Hawley did or did not have the requisite knowledge. Id. at 846. As the court noted in Taber Extrusions, "Particularly when the issue turns on the defendant's intent or scienter, summary judgment for the plaintiff is inappropriate." Id. The genuine issues of material fact on the "knowledge" requirement here are sufficient to deny the government's motion for summary judgment on its (a)(2) claim.
Turning to Hawley's motion for summary judgment on this claim, Hawley also asserts that the government cannot, as a matter of law, prove that Hawley made, used, or caused to be made or used, any of the records or statements at issue in Count Two, because the forms merely passed through Hawley's office, or were prepared and submitted by the purported insureds and adjusters without any participation by Hawley. Hawley argues that only the insurer verified any information and made the decision to issue policies and pay claims. Hawley also contends that its actions did not cause the government's damages, because the government would have sustained identical losses, had the true persons with an interest in the South Dakota Crop Land been identified in the paperwork on which the government's § 3729(a)(2) claim is based. Finally, Hawley contends that the government has recovered all of its damages from any false claims from the Windquists and Marshall. Therefore, Hawley contends that it is entitled to summary judgment on the government's § 3729(a)(2) claim on these further grounds.
In response, the government contends that Hawley owed NCCI a fiduciary duty, which makes Hawley liable for the submission of the false documents. The government also contends that Hawley accepted, signed, and submitted to NCCI applications for persons not eligible for crop insurance and signed and submitted other documents on the basis of which crop loss claims were paid. The government also contends that it has not recovered from other bad actors the treble damages to which it is entitled under the FCA and for which Hawley is jointly and severally liable with those other bad actors. Therefore, the government contends that it is not estopped by any other parties' settlement from recovering damages from Hawley.
The court finds, first, that the insurance applications and acreage reports are the only documents related to the crop insurance claims for which the government has generated a genuine issue of material fact that Hawley signed, submitted, or participated in submitting. The court finds, however, that the government has generated genuine issues of material fact that those documents were "made" or "used" to get false or fraudulent claims for crop insurance benefits and premium subsidies paid or approved by the government, where submission of these documents was part of a multi-stage process leading to payment of claims. 31 U.S.C. § 3729(a)(2) (requiring that the report or statement be "made" or "used" to get the false or fraudulent claim paid or approved by the government); United States ex rel. Main v. Oakland City Univ., 426 F.3d 914, 916 (7th Cir.2005) (recognizing that, even in a multi-stage process to obtain a benefit from the government, a party that "uses" a document at one stage to proceed to the next stage has "used" the first-stage document to get a benefit paid or approved by the government within the meaning of § 3729(a)(2)); accord United States ex rel. Hendotv v. University of Phoenix, 461 F.3d 1166, 1173-74 (9th Cir.2006) (agreeing with the analysis in Main). The more difficult question, however, is whether Hawley "made" or "used" these documents or "caused" them to be made or used.
Hawley contends that he merely transmitted the documents, but did not certify or guarantee the accuracy of any information in them. The government counters that Hawley signed and submitted the documents  and at various points in its briefs, contends that Hawley "verified" and "certified" or was required to "verify" or "certify" them  knowing that the documents were required steps to obtain crop insurance benefits, so that he also "used" or "made" them, or at the very least, "caused" them to be "made" or "used." The parties have provided differing expert opinions concerning the obligations of the crop insurance agent to verify the contents of the documents submitted to obtain crop insurance. The court finds, however, that the record gives rise to genuine issues of material fact that the crop insurance applications and acreage reports could not have been submitted without an agent's signature, even if the agent was not required to "verify" or "certify" the accuracy of the contents of the documents in question. Therefore, if the agent's signature is, indeed, required, and the agent provides the required signature, it appears to the court that the agent has, at the very least, "caused" the documents in question to be "made" or "used" to obtain from the government the payment or approval of the claim in question, within the meaning of§ 3729(a)(2).
Hawley's liability, however, turns on proof that he not only provided necessary signatures on false documents, but that he also knew that the documents were false. See Fowler, 496 F.3d at 741 (a § 3729(a)(2) claim requires proof that the defendant made or used false documents or caused false documents to be made or used, that the documents were false, and that the defendant knew that they were false). The court's conclusion that an insurance agent can be held liable under § 3729(a)(2) if the insurance agent's assistance in submitting certain documents is required to complete a claim, and the agent knows the documents in question are false, is in keeping with the conclusion of the Eighth Circuit Court of Appeals that, "[w]ithout question, the first three subsections of 31 U.S.C. § 3729(a) are broad enough to `reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government.'" Taber Extrusions, LP, 341 F.3d at 845 (quoting Marcus, 317 U.S. at 544-45, 63 S.Ct. 379). Signing and submitting the documents in question, knowing them to be false, appears to the court to be precisely the sort of "knowing assistance" in the fraud by a person with no direct contractual relations with the government that Congress and the Eighth Circuit Court of Appeals were contemplating. Therefore, Hawley is not entitled to summary judgment on the government's § 3729(a)(2) claim on the ground that he did not "make," "use," or "cause" to be "made" or "used" any of the insurance applications and acreage reports, if he signed them, but did not "verify" or "certify" them.
The court also finds insufficient Hawley's contention that he is entitled to summary judgment on this claim on the ground that the government cannot prove that Hawley caused the government's damages, because the government would have sustained identical losses, had the true persons with an interest in the South Dakota Crop Land been identified in the paperwork on which the government's § 3729(a)(2) claim is based. Such an argument is too clever by half. The question is not whether the government would have paid or approved the same claim submitted by somebody else on the basis of the same documents submitted by somebody else, but whether the government actually paid the claim actually submitted on the basis of the false documents submitted by the persons who actually submitted them. 31 U.S.C. § 3729(a)(2) (prohibiting making or using a false record or statement to get a false or fraudulent claim paid or approved by the government); Sanders, 471 F.3d at 618 (for a § 3729(a)(2) claim, the government must actually have paid or approved the false or fraudulent claim). The court also finds that the government has generated genuine issues of material fact that the disposition of the criminal cases against Kluver and the Windquists and the settlement with Ed Marshall did not fully compensate the government for damages and penalties to which it may be entitled for submission of false claims. Thus, there is no bar in the present record to the government's ability to prove the "damages" element of its § 3729(a)(2).
Therefore, the court concludes that, like the government, Hawley is not entitled to summary judgment on the FCA claim pursuant to § 3729(a)(2) in Count Two.

4. The "conspiracy" claim pursuant to § 3729(a)(3)

a. Elements of the claim
In Count Three, the government asserts a third FCA claim, this time pursuant to § 3729(a)(3). Section 3729(a)(3) imposes liability on one who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid." 31 U.S.C. § 3729(a)(3). Like subsection (a)(2), subsection (a)(3) does not require proof of "presentment" of the claim to an officer or employee of the United States. Sanders, 471 F.3d at 616 & 618. Subsection (a)(3), however, addresses the distinct conduct of conspiring to defraud the government using false claims. Id. at 618. The Eleventh Circuit Court of Appeals has stated that, to establish a claim under subsection (a)(3), the plaintiff must show the following: "`(1) that the defendant conspired with one or more persons to get a false or fraudulent claim paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim.'" Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir.2005) (quoting United States ex rel. Stinson v. Provident Life & Accident Ins. Co., 721 F.Supp. 1247, 1259 (S.D.Fla.1989)). These elements comport with the elements that the Eighth Circuit Court of Appeals has stated, more generally, for proof of a "civil conspiracy." See In re Temporomandibular Joint (TMJ) Implants Prods. Liability Litig., 113 F.3d 1484, 1498 (8th Cir.1997) (TMJ Implants) ("To establish a civil conspiracy, plaintiffs must show five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy.").

b. The government's § 3729(a)(3) claim
The government contends that it can establish all of the elements of its FCA conspiracy claim as a matter of law, so that it is entitled to summary judgment on this claim. Hawley, on the other hand, contends that the government has presented no competent evidence of the necessary agreement or meeting of the minds, so that Hawley is entitled to summary judgment on this claim. The Eighth Circuit Court of Appeals has recognized that, "[w]ithout evidence of specific facts tending to show an agreement or a `meeting of the minds' and concerted action, a plaintiff seeking to show a civil conspiracy cannot survive a defendant's summary judgment motion." TMJ Implants, 113 F.3d at 1498.
The government contends that it has presented evidence of an agreement or meeting of the minds, because each of the alleged conspirators gained something from the false claims for crop insurance, including Hawley, which obtained substantial commissions on the policies; because Hawley's involvement was instrumental in the scheme to defraud the government, where without him, the other conspirators would not have been able to obtain federal crop insurance coverage; and because it has presented evidence suggesting (the government argues proving) that Hawley accepted, signed, and submitted the crop insurance documents when he knew or should have known that the documents were false or while recklessly disregarding whether or not they were false, which shows that he was not simply a dupe for the other conspirators, but a knowing participant in the fraudulent scheme. The court finds that the evidence to which the government points is sufficient to generate genuine issues of material fact that Hawley knowingly participated in a scheme, involving both a "meeting of the minds" and "concerted action," to allow ineligible persons to obtain and make claims against federal crop insurance, but far from sufficient to establish the government's FCA conspiracy claim as a matter of law. Cf. id. (summary judgment on a civil conspiracy claim is appropriate if there is no evidence tending to show a meeting of the minds and concerted action). Therefore, neither party is entitled to summary judgment on this claim.

C. The Common Law Claims
Hawley seeks summary judgment on the government's common law claims. Again, those claims are for common law fraud or concealment and for "payment under mistake of fact." The court will consider whether summary judgment in Hawley's favor is appropriate on these claims in turn.

1. The fraud claim

a. Elements of the claim
In Count Four, the government alleges that the defendants engaged in commonlaw fraud by making or using false records and statements or by concealing the true facts surrounding the individuals actually owning the farmland on which MPCI policies were issued and claims were made, knowing that the misrepresentations or concealments were material and knowing and intending that the United States would rely upon them, thereby causing the United States damages. Hawley contends that the government cannot establish this claim as a matter of law.
Hawley asserts that the elements of common law fraud are set forth in RESTATEMENT (SECOND) OF TORTS § 525, which states the following:
One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain rom action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.
Similarly, the government cites Beeck v. Kapalis, 302 N.W.2d 90 (Iowa 1981), for the following comparable elements of common law fraud:
The elements of fraud are: (1) a material misrepresentation (2) made knowingly (scienter) (3) with intent to induce the plaintiff to act or refrain from acting (4) upon which the plaintiff justifiably relies (5) with damages.
Beeck, 302 N.W.2d at 94 (citing, inter alia, RESTATEMENT (SECOND) OF TORTS § 525). This court has, likewise, identified the following as the elements of a fraud claim for damages under Iowa law:
(1) a representation by the opposing party, (2) falsity of the representation, (3) scienter (i.e., knowledge of falsity), (4) intent to deceive, (5) materiality of the misrepresentation, and (6) justifiable reliance by the claimant upon the representation, resulting in injury to the claimant.
McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp., 469 F.Supp.2d 677, 705 (N.D.Iowa 2007) (citing Smidt v. Porter, 695 N.W.2d 9, 22 (Iowa 2005)). This court has also recognized that, in the case of an alleged fraudulent non-disclosure or concealment, the first element is that the defendant made a false representation or concealed a material fact when under a legal duty to disclose that fact. Id. at 707.

b. Hawley's challenges to the claim
Hawley challenges the government's common law fraud claim on two grounds: First, he argues that he did not make or "certify" the truth of any of the allegedly false statements upon which the claim is based. Second, he argues that the government cannot, as a matter of law, prove "justifiable reliance," where the documents containing supposedly false information to which the farmers had certified were never received by the government, but were, instead, received and acted on by the private insurance provider. The government responds to Hawley's first contention by pointing out that, according to applicable FCIC Policies and Procedures, the crop insurance agent must ensure that the person who signs the corp insurance application has a bona fide share in the insured crop. As to Hawley's second contention, the government contends that the government relied on NCCI to request reimbursement of only valid claims and that it was reasonable for the government to rely on submissions by the insurance agent in paying crop insurance claims, where the government relied on private insurance companies and their agents to sell and service federal crop insurance. The government argues that privity of contract is not required to prove justifiable reliance on information provided by the defendant.
The court finds that, based on the record presented, the government's fraud claim in Count Four is in essence, or primarily, a fraudulent non-disclosure or concealment claim. This court has set out the requirements of the non-disclosure or concealment element of such a claim as follows:
[W]here the fraud was purportedly a nondisclosure or concealment, the claimant must show that the alleged tortfeasor was under a legal duty to communicate the withheld information to prevail (or must so plead to state a claim). See, e.g., Schaller Tel. Co. v. Golden Sky Sys., Inc., 139 F.Supp.2d 1071, 1104 (N.D.Iowa 2001) (summarizing Iowa law on fraudulent misrepresentation and fraudulent nondisclosure). Iowa cases have not provided a specific test for determining when a duty to disclose arises in fraudulent nondisclosure cases. See Clark, 546 N.W.2d at 592 (citing Sinnard v. Roach, 414 N.W.2d 100, 106 (Iowa 1987)); Arthur v. Brick, 565 N.W.2d 623, 625 (Iowa Ct.App.1997). They have, however, observed that, to prove the necessary duty to disclose, the plaintiff need not show a fiduciary duty existed, but may, instead, establish that a duty arose from "inequality of condition and knowledge, or other circumstances shown by a particular fact situation." Irons v. Community State Bank, 461 N.W.2d 849, 854 (Iowa Ct.App.1990); see Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir.2002) (noting that, under Iowa law, a duty to reveal arises when "`one with superior knowledge, dealing with inexperienced persons who rely on him or her, purposely suppresses the truth respecting a material fact involved in the transaction.'") (quoting Clark, 546 N.W.2d at 592). Thus, "for concealment to be actionable, the representation must relate to a material matter known to the party... which it is his legal duty to communicate to the other contracting party whether the duty arises from a relation of trust, from confidence, from inequality of condition and knowledge, or other attendant circumstances." Clark, 546 N.W.2d at 592; Sinnard, 414 N.W.2d at 105 (stating the same standard). The Iowa Supreme Court "has recognized a duty to disclose in situations where the plaintiff and the defendant were involved in some type of business transaction, such as buyer/seller or owner/contractor," but only when the relative knowledge and experience of the parties warrants. Wright v. Brooke Group, Ltd., 652 N.W.2d 159, 174 (Iowa 2002) (citing cases). The duty to disclose may also arise "from the `attendant circumstances,' such as a `contrivance intended to exclude suspicion and prevent inquiry.'" Id. at 175 (quoting Wilden Clinic, Inc. v. City of Des Moines, 229 N.W.2d 286, 293 (Iowa 1975), in turn quoting 37 Am.Jur.2d, Fraud and Deceit § 145 (1968), and involving a dispute between a buyer and seller of land).
McLeodUSA Telecomm. Servs., Inc., 469 F.Supp.2d at 707-08.
The court finds that the government has generated genuine issues of material fact on this element of its common law fraud claim. The requisite legal duty to disclose the ineligibility of the applicants for crop insurance  and the court has already determined, in reference to the FCA claims, that there are genuine issues of material fact as to whether Hawley knew that the applicants were ineligible for crop insurance  may arise here in light of evidence that a crop insurance agent such as Hawley has superior knowledge about the applicants for such insurance, as compared to the FCIC. Id. The duty to disclose may also arise from the attendant circumstances, including the applicable FCIC Policies and Procedures, which would have required the insurance agent to attempt to determine whether the applicants had a bona fide interest in the crops to be insured. Id. Moreover, the court found, above, that the government had generated genuine issues of material fact on a "conspiracy" to defraud the government, in violation of the FCA, and the court finds that the same evidence generates genuine issues of material fact that Hawyley engaged in a contrivance intended to exclude suspicion and prevent inquiry for purposes of a fraudulent concealment claim. Id. Therefore, Hawley is not entitled to summary judgment on this claim on the ground that the government cannot, as a matter of law, prove fraudulent conduct on his part.
The court also finds that the government has generated genuine issues of material fact on the "justifiable reliance" element of its common law fraud claim, which Hawley also challenges here. As the Iowa Supreme Court has explained,
Reliance is justified when a reasonably careful person would be justified in relying on the information supplied. Reliance is not justified if the person receiving the information knows or in the exercise of ordinary care should know that the information is false.
Pollmann v. Belle Plaine Livestock Auction, Inc., 567 N.W.2d 405, 410 (Iowa 1997). Thus, a plaintiff cannot recover if he "blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Lockard v. Carson, 287 N.W.2d 871, 878 (Iowa 1980); accord Restatement (Second) of Torts § 541 cmt. a (1977).
Hawley contends that the government cannot assert that it justifiably relied on any statements or records that he signed or submitted, because those statements or records were only submitted to NCCI, not the government. The Iowa Supreme Court encountered a similar argument in Clark v. McDaniel, 546 N.W.2d 590 (Iowa 1996). In Clark, the alleged tortfeasor also asserted that the plaintiffs, as third parties, did not justifiably rely on any representations that the alleged tortfeasor made to another. The Iowa Supreme Court concluded, however, that no direct contractual relationship is required between the alleged tortfeasor and the person who justifiably relies to his or her detriment on the alleged tortfeasor's representations, because "[u]nder Restatement (Second) of Torts section 533 (1977) [hereinafter Restatement], persons who fraudulently misrepresent the truth can be held liable to third parties if they have a `reason to expect' their misrepresentation will be communicated to third parties." Clark, 546 N.W.2d at 593. More specifically, RESTATEMENT (SECOND) OF TORTS § 533 provides as follows:
The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved.
RESTATEMENT (SECOND) OF TORTS § 533; see also Clark, 546 N.W.2d at 593 (quoting this provision). As the Iowa Supreme Court explained, further,
The maker's liability "includes those whom he has reason to expect [the misrepresentation] to reach and influence, although he does not make the misrepresentation with that intent or purpose." Restatement § 533 cmt. d. "Reason to expect" is defined objectively:
In order for the maker of a fraudulent misrepresentation to have reason to expect that it will reach third persons and influence their conduct it is not enough that he recognizes, or as a reasonable man should recognize, the risk that it may be communicated to them and they may act upon it.... When only pecuniary loss results, the magnitude of the extent to which misrepresentations may be circulated and the losses that may result from reliance upon them has induced courts to limit the liability to the narrower rule stated in this section.
Virtually any misrepresentation is capable of being transmitted or repeated to third persons, and if sufficiently convincing may create an obvious risk that they may act in reliance upon it. This risk is not enough for the liability covered in this section. The maker of the misrepresentation must have information that would lead a reasonable man to conclude that there is an especial likelihood that it will reach those persons and will influence their conduct.
Restatement § 531 cmt. d.
Clark, 546 N.W.2d at 593. In Clark, the Iowa Supreme Court expressly adopted § 533 and held, in the case then before the court, that a tortfeasor who made misrepresentations about a motor vehicle could reasonably expect that the misrepresentations would be communicated to and relied upon by a third party, so that the alleged tortfeasor could be liable for the fraud. Id. at 593-94.
In the present case, there are at least genuine issues of material fact that Hawley made misrepresentations, or failed to disclose misrepresentations, in the various documents it signed and submitted in support of crop insurance applications or claims; that those misrepresentations, although not made directly to the government, were made to NCCI; that Hawley intended or had reason to expect that the misrepresentations would be repeated or their substance communicated to the government; and that those misrepresentations would influence the government to reimburse NCCI for indemnity payments and to pay crop insurance premium subsidies. RESTATEMENT (SECOND) OF TORTS § 533; Clark, 546 N.W.2d at 593. The record shows that Hawley knew, from his prior employment as an adjuster for NCCI and from his role as a crop insurance agent, that the government subsidized crop insurance indemnity payments and premiums based on information provided to the private insurer. These are circumstances in which there are at least genuine issues of material fact that the maker of the misrepresentation or concealer of the falsity of the misrepresentations, Hawley, had information that would lead a reasonable man to conclude that there was an especial likelihood that the false documents would reach the government, even though the government was a third party to the crop insurance contracts, and that the false documents would influence the government to reimburse indemnity payments and pay premium subsidies. See Clark, 546 N.W.2d at 593 (quoting with favor this standard from RESTATEMENT (SECOND) OF TORTS § 531 cmt. d). Therefore, Hawley is not entitled to summary judgment on the government's common law fraud claim on the ground that the government cannot show justifiable reliance upon misrepresentations purportedly made only to NCCI.
Hawley's motion for summary judgment on the government's common law fraud claim, thus, will be denied.

2. The "payment under mistake of fact" claim
In Count Five, the government asserts a claim of "payment under mistake of fact" alleging that the United States paid crop insurance indemnities and premium subsidy benefits under the erroneous belief that the persons receiving those benefits were eligible for them, causing the United States damages. As relief on this claim, the government seeks damages, plus interest and costs. Hawley contends that this claim fails as a matter of law, because the government has not alleged that there was a contract between Hawley and the government. The government responds that Hawley was the agent of NCCI, which did have a direct contractual relationship with the government through the Standard Reinsurance Agreement, and that Hawley has made only a legal challenge to the claim, not a factual one.
Neither party cites any law whatsoever in support of its argument concerning this claim. There are hints in Iowa cases that a "mistake of fact" may be a ground for reformation or rescission of a contract, an equitable action for restitution, or an action for damages. See, e.g., Sioux County State Bank v. Veenstra, 372 N.W.2d 309, 311-12 (Iowa Ct.App.1985) (reformation); Binkholaler v. Carpenter, 260 Iowa 1297, 1304-05, 152 N.W.2d 593, 598 (1967) (finding that the remedy for a mutual mistake of fact is not limited to reformation of the contract or damages, but may include rescission, although the court did not decide that an action for damages was available); National Fire Ins. Co. of Hartford v. Butler, 260 Iowa 1159, 1163, 152 N.W.2d 271, 274 (1967) (restitution); see also Barnard v. Cedar Rapids City Cab Co., 257 Iowa 734, 741, 133 N.W.2d 884, 890 (1965) ("Our cases have long held a contract may be set aside for a mutual mistake of a material fact and a release is no different than any other contract."). The government does not appear to seek reformation or rescission of any contract. Instead, it prays for "damages" for mistake of fact. Notwithstanding the government's description of its remedy as "damages," the authority that most nearly matches the government's allegations describes the appropriate remedy as "restitution": "`A person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum paid was necessary for the discharge of a duty, for the performance of a condition, of for the acceptance of an offer, is entitled to restitution of the excess.'" Reeves v. Better Taste Popcorn Co., 246 Iowa 508, 515, 66 N.W.2d 853, 857 (1954) (quoting RESTATEMENT OF THE LAW ON RESTITUTION § 20). Restitution plainly cannot be obtained from someone who did not receive the excessive payment. Moreover, in each of the cases discussing remedies for mistake of fact, the remedy was sought against the other party to the contract, that is, the party who had received the excessive payment, not against an agent of that party or a third party. In the absence of any authority supporting the government's contention that it is entitled to recover on a theory of "payment under mistake of fact" from an agent of a party with whom it contracted or from a third party, instead of from the party or parties to whom or for whom payments were made (NCCI or the insureds), the government's "mistake of fact" claim fails as a matter of law.
Therefore, Hawley is entitled to summary judgment on the government's claim of "payment under mistake of fact" in Count Five.

III. CONCLUSION
Upon the foregoing,
1. The government's December 28, 2007, Motion For Summary Judgment Or In The Alternative Partial Summary Judgment (docket no. 16) is denied in its entirety; and
2. The defendants' December 28, 2007, Motion For Summary Judgment (docket no. 17) is granted in part and denied in part. More specifically, the defendants' motion is granted as to Count One, the FCA claim pursuant to 31 U.S.C. § 3729(a)(1) alleging "presentation of a false claim," and as to Count Five, the common law claim for "payment under mistake of fact," but denied as to Counts Two, Three, and Four.
IT IS SO ORDERED.
NOTES
[1] The court's ability to develop a coherent factual background for the present litigation is hampered by various lacunae in the parties' recitations of fact and the failure of the United States to respond, in the manner required by N.D. IA. L.R. 56(d), to the defendants' statement of additional facts (docket no. 24-3) in response to the motion for summary judgment by the United States, which the defendants had filed pursuant to N.D. IA. L.R. 56(b)(3). Because the United States has failed to respond to the defendants' allegations in their statement of additional facts, those allegations are deemed admitted for purposes of this summary judgment ruling. See N.D. IA. L.R. 56(d) ("The failure to reply, with appropriate citations to the appendix, to an individual statement of material fact constitutes an admission of that fact.").
[2] The Eighth Circuit Court of Appeals has found that heightened pleading requirements are applicable to FCA claims pursuant to § 3729(a):

Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b). United States ex rel. Kinney v. Stoltz, 327 F.3d 671, 674 (8th Cir.2003). Under Rule 9(b), "the circumstances constituting fraud ... shall be stated with particularity." Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims," and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir.2003) (citing Abels v. Farmers Commodities Corp., 259 F.3d 910, 920-21 (8th Cir. 2001)). To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. See, e.g., Corsello, 428 F.3d at 1012; Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir.2002). Put another way, the complaint must identify the "who, what, where, when, and how" of the alleged fraud. Costner, 317 F.3d at 888 (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997)).
United States ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir.2006). The parties' cross-motions for summary judgment on the government's FCA claims do not turn on sufficiency of the pleading of those claims, however.
[3] For reasons that pass understanding, this case is identified in the "headers" in the bound version as "UNITED STATES EX REL. THACKER" rather than "UNITED STATES EX REL. SANDERS." Sanders, however, is the first named "relator" and the "relator" whose name is used in the case caption of the on-line version.
[4] The Sixth Circuit Court of Appeals noted that a plaintiff might still choose to bring a claim under subsection (a)(1), despite its "presentment" requirement, rather than use the apparently "more lenient" subsection (a)(2) for all claims, because subsection (a)(2) contains its own "more burdensome requirement" that the claim must actually have been paid, which subsection (a)(1) does not require. Sanders. 471 F.3d at 617.
[5] Because the court finds that the government's § 3729(a)(1) claim fails as a matter of law on the "presentment" requirement, the court does not reach the parties' disputes concerning the "claim" requirement or the "knowledge" element of such a claim.